LAND COMPANY *v.* HILL AND OTHERS.

(*Jackson.*    May 7, 1889.)

\* 1. WILL.    *Remainder to children as a class.*

A devise to a daughter for life, with remainder to her children, the survivors or survivor of them living at her death, vests the estate in remainder in the children living at the death of the testator, *as a class*, and such estate will open and let in after-born children, and will be defeated as to any child or children dying in the life-time of the mother.

Cases cited: Satterfield *v.* Mays, 11 Hum., 57; Bridgewater *v.* Gordon, 2 Sneed, 5; McClung *v.* McMullen, 1 Heis., 655, 660.

2. SAME.    *Same.    Deed of one of the children.*

In such case, the children living at testator's death do not take as tenants in common, during the life-time of the mother, but only as members of a fluctuating class, with no specific or fixed interests, and a conveyance by one of them to a third party by deed with covenants of seizin and general warranty, of the whole of a tract of land so devised, does not impose upon the vendee, toward the other children, the duties and obligations of one tenant in common to another.

3. RESCISSION.    *Executed contract.    Fraud.    Insolvency.*

A purchaser, after deed made and possession taken under it, in the absence of fraud, is not entitled to rescission, or to resist payment of the purchase money so long as he remains in possession, unless the seller is insolvent.

Authorities cited: 1 Sugden on Vendors, 251, 8 Am. Ed.; Abbott *v.* Allen, 2 Johns. Ch. R., 519; 12 Heis., 175; 5 Sneed, 505; 1 Head, 640.

4. FRAUD.    *In obtaining sale under trust deed, what is not.*

That a party desirous of acquiring land incumbered by a trust deed made by a testatrix in her life-time for the security of debt, procures the trustee or a creditor to foreclose, and buys at the sale made openly and fairly upon public advertisement and competitive bidding, in strict accordance with the terms of the trust, is no evidence of · fraud against the devisee, where such purchaser is ignorant of the

---

\* Syllabus prepared by Judge Pitts.—REPORTER.

Land Company *v.* Hill and Others.

existence and terms of the will, and believes the land had descended. to the sole heir at law, whose vendee proposes to convey to him upon such sale being made by the trustee, and where the sole object in procuring the foreclosure is the exhaustion of the creditor's remedies. against the land, although the vendee of the heir had assumed the payment of the incumbrance.

5. SAME. *Notice of existence and terms of will, what.*

The notice of the existence and terms of a will, implied by a charge of fraud in concealing them, is *actual,* and not merely *constructive* notice.

6. CONSTRUCTIVE NOTICE. *Extends to whom.*

Constructive notice of a will, arising from the fact that it is a public record, extends only to persons acquiring rights or titles which are in some way resting on, or subordinate to, or affected by, the will, and does not extend to those acquiring rights or titles wholly independent of and superior to the will.

7. SAME. *Deeds and instruments referred to in title papers, how far constructive notice.*

The general rule that a party is held to have constructive notice of what appears in the deeds and instruments referred to in the title papers constituting his chain of title, does not, in principle, apply to collateral and immaterial deeds or instruments incidentally referred to, not as relating in any way to the title or land conveyed, but only to the *consideration.*

Cited : Bigelow on Estoppels, 341, *et seq. ;* 2 Devlin on Deeds, ?? 1000,. 1006.

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. B. M. ESTES, Ch.

W. M. RANDOLPH for Complainant.

HILL & WILKERSON, CRAFT & CRAFT, and METCALF & WALKER for Respondents.

Land Company *v.* Hill and Others.

*John A. Pitts, Sp. J.   On the 25th of June, 1887, Napoleon Hill sold and conveyed by deed with covenants of seizin, general warranty, and against incumbrances, to the Kansas City Land Company, a tract of land in Shelby County of sixty-six and thirty-seven one-hundreths acres, for the consideration of $149,332.50, of which the sum of $56,000 was paid in cash, and the balance secured by two notes for $46,666.25 each, bearing interest, and due at one and two years. A lien was retained in the deed, and the Land Company was placed in possession.

On the 22d of June, 1888, a few days before the maturity of the first note, the Land Company filed the original bill in this cause against Hill, its vendor, Mrs. Elizabeth M. Hays (named in the bill as Lizzie W. Hays), and her three sons, Samuel J., James W., and John M. Hays, suggesting that the title to forty-four of the sixty-six and thirty-seven one-hundreths acres conveyed to it by Hill was doubtful, and probably defective; that, if so, Hill had fraudulently represented that his title was good to the whole of the property conveyed, and that without the forty-four acres, which were claimed by the other defendants, the purchase was not desirable; and praying in the alternative, first, that its title under Hill's conveyance be declared perfect and indefeasible, and the claims of the other defendants adjudged to be clouds thereon

*Sitting for Judge Folkes, who was incompetent.

and removed; and, secondly, if this could not be done, that its purchase from Hill be rescinded, its notes delivered up and canceled, and that it have a decree against Hill for the purchase money paid, with interest.

The primary relief sought by this bill is the quieting and confirmation of the complainant's title, and its effort throughout is, manifestly, to show that its title is good, notwithstanding the facts suggested as casting a doubt upon it.

The bill was dismissed as to James W. and John M. Hays, upon their demurrer, on grounds which need not be now considered. Samuel J. Hays filed a separate answer, which he prayed might be taken also as a cross-bill, claiming an interest in the forty-four acres under the will of his grandmother, Mary A. Walker. No defense seems to have been made by Mrs. Elizabeth M. Hays.

Hill also answered and denied all fraud, and that the title was doubtful or defective, and subsequently filed a cross-bill to enforce his lien for purchase money. The complainant Land Company, in its answer to this cross-bill, reversing the theory maintained by it in its original bill, vigorously assaults the title of Hill, and sets out with great minuteness and detail the facts on which it strenuously insists the title is bad, and asks unconditionally to be relieved of its purchase. It traverses some of the statements of its original bill, and, feeling doubtless the force of this incon-

sistency in its pleadings, states, by way of explanation in the answer, that such inconsistency arose from the insufficiency and falsity of the information upon which the contrary allegations in the bill were predicated, and that it has since ascertained the truth as set forth in the answer.

This feature of the case has been adverted to by counsel for defendants, and may be disposed of at once.

Upon inspection of the two pleadings it is apparent that the repugnancy between them is more of theory than of fact, and arises either upon statements made *on information* or upon statements of complainant's *conclusions*, and hence does not work any estoppel against the truth.

The Chancellor, upon a hearing on the merits, held the title good, denied relief to the complainant Land Company and defendant Samuel J. Hays, and gave defendant Hill a decree on his cross-bill enforcing his lien for purchase money. From this decree, as well as the previous decree sustaining the demurrer of James W. and John M. Hays, the Land Company appeals, and alone assigns error.

The land in controversy originally belonged to Mrs. Mary A. Walker, and it is conceded that the title must be derived from her. This defendant Hill undertakes to do in two ways, and through two distinct and separate chains—the one beginning with a deed of trust made by Mrs. Walker in her life-time, and the other with her will. It was

37

upon the first of these two chains of title—that beginning with the deed of trust—that the Chancellor based his decree, and if his view of the case is correct, it is conclusive, however defective the other chain may be. This aspect of the case will therefore be considered first.

The deed of trust was executed on the 11th day of July, 1872, by Mary A. Walker, defendant Elizabeth M. Hays (therein named as Lizzie W. Hays) and her husband, A. J. Hays, to C. B. Wellford, as trustee, to secure eleven promissory notes of the same date, made by the makers of the deed, and payable to the Life Association of America, one for $5,000, due five years after date, and ten for $250 each for interest, due respectively at the end of each semi-annual period from date, all of the notes being given to secure a loan of $5,000 with ten *per cent.* interest, payable semi-annually. It provided that upon default in the payment of any of the notes at maturity, the right of immediate foreclosure should accrue, and the whole debt, for the purpose of foreclosure, become due at once. A similar result was to follow, by the terms of the deed, upon a failure to pay taxes promptly as they accrued. It was properly acknowledged and registered, and no question is made against its validity. It is shown that the debt secured by it was the debt of Mrs. Walker, incurred for improvements on the property now in controversy which then belonged to her. No reason is shown for the joining of Mrs. Hays

and her husband in this deed, unless it be the fact that Mrs. Walker had previously made her will devising the property to Mrs. Hays for life, though this does not appear from the face of the deed.

On the 28th of July, 1877, after the death of Mrs. Walker, Wellford, the trustee, sold the property, in pursuance of the terms of the deed, to Napoleon Hill and W. F. Taylor for $6,005, which they paid in cash, being about $100 in excess of the debt then due and expenses of sale; and on the 30th of the same month the trustee conveyed to them by deed with proper recitals. Taylor subsequently sold and conveyed his interest to Hill. These conveyances are all regular, and exhibit a good and indefeasible title on their face. This is not controverted.

But it is insisted, on behalf of the opponents of Hill, that the sale and conveyance by Wellford, the trustee, were procured by the fraud and collusion of Hill and Taylor, and one Chas. Hewett, with a view to cutting off the devisees of Mrs. Mary A. Walker, and that such conveyance is therefore ineffectual as against such devisees, and is liable to be impeached by them and declared void at any time.

This contention is specially important on account not only of the magnitude of the interests involved, but also of the provisions of the will of Mary A. Walker, by which the property in controversy was given to her daughter, Elizabeth M. Hays, for life,

with remainder in fee to her children living at her death. Children of Mrs. Hays not yet born, should such survive her, will take an interest in the property under the will, in conjunction with such of her present children as shall also survive her; and in the event future-born children only shall survive her, they will take the whole property, the devise being to the children of Mrs. Hays, the survivors or survivor of them at her death, as a class. *Satterfield* v. *Mays*, 11 Hum., 57; *McClung* v. *McMullen*, 1 Heis., 655, 660; *Bridgewater* v. *Gordon*, 2 Sneed, 5.

It is possible, therefore, that the persons who will ultimately take the remainder under this will, and who are to be affected by the alleged fraud against the remaindermen, are not now in existence. If, then, the title is subject to the alleged infirmity, it is of the greatest importance to complainant that the fact be ascertained at once, and timely relief afforded, as otherwise, upon the future total or partial failure of the title by reason of such infirmity, in the possible contingency stated, its remedy upon the covenants of the deed under which it holds might be wholly inadequate.

The present children of Mrs. Hays, with herself, have all conveyed the property in controversy to Hill, since the commencement of this suit, warranting against all persons claiming under or through them; or, to speak more accurately, they have executed and acknowledged such a conveyance, and offer to deliver it upon the payment to them by

Hill of a sum named, and he on his part agrees to comply and accept the deed on condition that the complainant Land Company now has, under its deed from him, a good title, or will have by virtue of the proffered conveyance by the Hayses, and a proper transfer thereof by him to complainant. So that, so far as the present children of Mrs. Hays, or Mrs. Hays herself in any possible event, are concerned, the decision of the question stated is not necessary in the present aspect of the case, inasmuch as their proffered deed would as fully divest them of all title as could be done by the decree of the court. But in the possible contingency that a child or children of Mrs. Hays may be born hereafter and survive her, the interest which such child or children will take under the will must necessarily defeat the title of complainant to that extent, if it be true that the deed of Wellford, the trustee, can be successfully impeached; and in view of this contingency it is necessary to examine the question.

The alleged fraud and collusion in procuring the trust sale and conveyance, it is obvious, were not wrongs against the complainant Land Company, nor any one under whom it claims. But it is insisted that Hill, having participated in such fraud, and with knowledge of the existence and terms of the will, *concealed* these facts from complainant in his sale to it, and falsely represented that his title was good.

The complainant having accepted a deed from

Hill, and taken possession under it, and being still in possession, the bill would probably have been demurrable as a bill to rescind, without these allegations of fraud, as there is no allegation of Hill's insolvency; for the general rule undoubtedly is that a purchaser after deed made, in the absence of fraud, concealment, or misrepresentation, has no remedy except upon the covenants in the deed, unless the seller is insolvent. 1 *Sudg. Vend.*, p. 251, (8 Am. Ed.); *Abbott* v. *Allen*, 2 Johns. Ch. R., p. 519; 12 Heis., 175; 5 Sneed, 505; 1 Head, 640.

The question of fraud out of the way, the complainant is not entitled to a rescission so long as it remains in the undisturbed possession of the property conveyed. If the title is bad, either totally or partially, the covenant of seizin was broken as soon as made, and a right of action accrued upon that covenant immediately. If there was a failure of title to the whole of the property conveyed, the measure of damages upon the covenant of seizin would be the price paid, and a recovery would operate practically as a rescission, for a purchaser cannot be permitted to recover back the consideration and also retain the property conveyed.

Upon the pleadings here, however, the case is for rescission, if for any relief at all, and the vital question therefore is, have the charges of fraud been sustained?

From what has been said it is obvious that the alleged fraud on the part of Hill relates to two

distinct subjects, namely, first, the sale and convey-
ance by the trustee Wellford, which, it is insisted,
Hill procured to be made with the view and for
the purpose of cutting off the devisees of Mrs.
Walker, and which necessarily implies that he had
actual knowledge of the existence and terms of
Mrs. Walker's will; and, secondly, the sale made
by Hill to the complainant Land Company, in
which it is insisted he concealed his knowledge of
the existence and contents of the will, his agency
in procuring the sale made by Wellford, and fraud-
ulently represented that his title was good and in-
defeasible.

The contention of Hill, on the contrary, is that
he had no knowledge or information of the exist-
ence or contents of the will until long after his
sale to complainant; that he had no agency what-
ever in procuring the sale by Wellford, and that
he made no false statement or representation in his
sale to the complainant; and he so testifies, posi-
tively and unequivocally, in his deposition.

It appears that on the 6th day of March, 1877,
after the death of the testatrix, Mary A. Walker,
Mrs. Elizabeth M. Hays (who was her only sur-
viving child and heir at law), and her husband, A.
J. Hays, and son, Samuel J. Hays, conveyed the
forty-four acres in controversy to one Charles
Hewett, of St. Louis, Missouri, with covenants of
seizin, general warranty, and against all incum-
brances except the deed of trust to Wellford, which
was recited as an existing incumbrance on the land,

together with some past due taxes—which incumbrances, it was also recited, Hewett was to discharge as a part of the consideration. At that time the interest note, due January 11, 1877, was past due, and unpaid; and one other interest note, and the note for the principal, had not matured. Hewett, not having the means with which to pay the past due note, procured Sterling & Webster, a business firm at St. Louis, to take it up from the Life Association of America, whose principal office was also at St. Louis, which they did on April 11, 1877, agreeing to hold the note a reasonable time for Hewett's accommodation, with the deed of trust as security.

It is argued by counsel for complainant that this transaction was a payment and discharge of the note as a debt against the land under the deed of trust, and that it thereafter became only a personal debt of Hewett to Sterling & Webster; and hence, there not being sufficient time for advertising between the maturing of the next notes, July 11, and the date of the sale, that the sale was premature and void.

The proof is clearly to the contrary. The transaction amounted to a purchase of the debt by Sterling & Webster, under an express agreement that they should have the benefit of the deed of trust for its security. They took up and held the note itself, and took no note from nor made any charge against Hewett. It was a subsisting part of the trust debt at the date of the sale, past due since January previous.

This note not being paid by Hewett, Wellford, the trustee, at the instance of Sterling & Webster, who paid the costs of advertising, amounting to twenty-two dollars, advertised and sold the property, as before stated, and out of the proceeds discharged all the notes and expenses of sale.

In the meantime, the precise date not appearing, Hewett entered upon negotiations with W. F. Taylor and defendant Hill for the sale of the property to them, Taylor conducting the negotiations on the part of himself and Hill. The terms of sale were agreed on, and a deed was prepared on July 2, 1877. But before closing the purchase Hill and Taylor procured an abstract of the title and submitted it to counsel for examination. The title was rejected on account of the existence, unsatisfied, of the deed of trust to Wellford, and thereupon the negotiations for the sale were suspended, or abandoned.

There is no fact or circumstance shown which indicates that either Hill or Taylor, at that time, or at the date of the trustee's sale, on the 28th of July, knew that Mrs. Walker had left a will. On the contrary, it appears that they knew, or had been informed, that Mrs. Hays was the only child and heir at law of Mrs. Walker, and they supposed that the title had descended to her as heir, subject to the deed of trust; and it was upon this assumption that the investigation of the title proceeded. Taylor likewise testifies positively that he had no knowledge or information of a will

having been made, and that he had no agency in procuring the sale made by the trustee, and no knowledge of it until he saw it advertised in the papers.

A deed, however, is produced from Hewett to Hill and Taylor, dated July 2, 1877, for this same property, containing covenants of seizin, warranty, and against incumbrances, and reciting a consideration of eight dollars paid; and it is shown by proof that they paid to Hewett or his agent, after the trustee's sale, the sum of one thousand dollars on account of the land; and it is argued that these facts show that the sale by the trustee on July 28th was made in pursuance of a previous collusive and fraudulent understanding and agreement between Hewett and Hill and Taylor, notwithstanding the testimony above cited to the contrary.

Although the deed bears date July 2d, which was before the sale, it is clearly shown that it was not delivered nor acknowledged until the first day of August thereafter, and the one thousand dollars paid Hewett, or his agent, was paid on the delivery of this deed. It was doubtless the same deed that was drawn and dated at the time the parties first· agreed on the terms of sale, before the title was investigated, and was afterward delivered without changing its date. It obviously did not take effect until it was delivered, which was after the sale and conveyance by the trustee. But even with this explanation it is impossible to reconcile these facts with the non-agency and indifference of

Hill and Taylor as to the trustee's sale, and with their contention that their contemplated purchase from Hewett had been abandoned; or to avoid the conclusion that the sale was made in pursuance of a previous understanding between them and Hewett, as a thing to be done before their contemplated trade should be consummated. Why should they pay to Hewett one thousand dollars after they had purchased and taken deed from the trustee investing them with the full title, freed from the incumbrance, if they did not consider themselves under some legal or moral obligation to do so? What interest had Hewett, then, which could pass by his deed? The trust deed provided that the sale should be free from the right of redemption, and the sale had been so made. Hewett, occupying the shoes of the makers of the trust, therefore did not have the right of redemption, nor does it otherwise appear that he had any interest whatever after the sale, except in the surplus of the proceeds, and his deed was evidently not intended to pass that. Another circumstance which confirms the conclusion that Hill and Taylor must have had an agreement and understanding with Hewett before the sale that the sale should be made, and that they would eventually purchase the forty-four acres, is the fact that while Hill, in his deposition, says that he and Taylor would not have purchased the other land embraced in his sale to complainant, and not now in controversy, *without the forty-four acres,* and claims that they did not make such purchase until

after their purchase of the forty-four acres at the trustee's sale, yet their deed for the *other* land is dated July 5, 1877, *before* the trustee's sale, and it is not shown that this was not the correct date of the purchase.

Hill does not give any reason for taking Hewett's deed and paying the one thousand dollars, the transaction having been conducted by Taylor. Taylor, in his deposition, when asked why Hewett was paid this money, says, "I expect, to carry out the original trade."

Hewett, in answer to the question why his deed to Hill and Taylor was not delivered until the 1st day of August, says: "Mr. Hill, to the best of my recollection, refused to take a deed until after the sale of the land in dispute under Mrs. Mary A. Walker's trust deed. On the 1st day of August, when the deed was delivered, I got a check through W. I. Berlin for a thousand dollars from Hill and Taylor, paid through Hill, Fontaine & Co., of Memphis, Tenn., *the amount due as purchase money.*"

The true state of facts on this question, established by the proof and circumstances, must be taken to be, that upon discovering the unsatisfied trust deed, Hill and Taylor refused to complete their purchase from Hewett until the trust deed should be foreclosed, and the same was thereupon suspended, but with the understanding that if Hill and Taylor should become the purchasers of the property at the foreclosure sale, they would then complete their purchase from Hewett, accept his

deed, and pay him the margin of difference, if any, between the contract price agreed on with him and the amount. bid at the sale. It does not definitely appear what the original contract price to be paid Hewett was. It is stated in general terms by Taylor to have been eight thousand or ten thousand dollars, he does not remember definitely, and there is no other direct evidence of the amount. There were several years' back taxes due upon the property, which Hill and Taylor assumed to pay in their purchase from the trustee, and it is fairly inferable that these taxes, and the one thousand dollars paid Hewett, made up the margin of difference between the contract price and the amount paid the trustee.

Now, upon this state of facts, what is the effect of the transaction on the title of the devisees of Mrs. Walker? Does it constitute such a fraud upon their rights as, if they were here now complaining, would entitle them to relief against the purchasers at the trust sale? Undoubtedly, if the sale was brought about by Hill and Taylor for the purpose of defrauding the devisees of Mrs. Walker out of their estate in remainder, it could not be allowed to prevail against them, and probably the same result would follow if its purpose were otherwise fraudulent or unlawful. But the real question is, was it fraudulent or unlawful as against any one? The purchasers having no knowledge of the will of Mrs. Walker, it is not possible that they could have purposed any prejudice of her devisees.

Mrs. Hays was known by them to be the only heir, upon whom they believed the property had descended, and they knew she had conveyed her entire interest in this land to Hewett. It is equally impossible, therefore, that their purpose could have been to injure her. It is perfectly obvious, on the other hand, that the persons against whom they were seeking protection by the foreclosure, were neither the heirs nor the devisees of Mrs. Walker, but the holders of the notes, the incumbrancers of the land. They knew, it is true, that Hewett had assumed the payment of this incumbrance, but they could not ascertain from the trust deed how much remained unpaid, nor had they any certain and convenient means of doing so in any way. The notes were payable to a corporation of another State. It was possible that some of the notes that were claimed to have been paid had not in fact been paid. It was also possible that the land might be made liable to the general creditors of Mrs. Walker for their debts. Hill and Taylor, therefore, had good reason for being unwilling to take upon themselves so uncertain and elastic an obligation as Hewett had assumed, and the proof is they did positively refuse to do so.

Being desirous of acquiring the land, and unwilling to assume the incumbrance on it, or to buy subject to it and take the risk of other liabilities that might come against it—was there any thing unlawful or improper in Hill and Taylor

becoming active or instrumental in moving the creditor or the trustee to proceed to foreclosure in accordance with the terms of the trust, and in buying the land at the sale, made openly upon public advertisement and competitive bidding, and with no object in view but the extinguishment of the creditor's remedies against the land? We hold most unquestionably not. No fraud can be predicated of such a transaction. It was perfectly innocent and lawful, and just such a course as would have suggested itself to any prudent business man under similar circumstances.

But it is further insisted for the Land Company that Hill and Taylor were affected with notice of the existence and terms of Mrs. Walker's will, because, first, the will had been probated and placed upon the public records of the county, and the law therefore presumed their knowledge of it; and, secondly, in Hewett's deed from Mrs. Hays and her husband and son, it is recited that Hewett, as a part of the consideration thereof, had conveyed to them a tract of land in Mississippi County, Arkansas, and in this latter conveyance it is recited that Mrs. Walker had made a will giving the property in controversy to Mrs. Hays and her children; and it is insisted that Hill and Taylor having accepted a deed from Hewett, they are fixed with notice of the contents of all deeds and instruments recited or referred to in his title papers.

Both propositions are untenable upon the facts of this case. Hill and Taylor claiming, as they do,

under a deed of trust made by the testatrix in her life-time, and therefore independent of and superior to any title *resting on her will*, the probate and record of the will are not even constructive notice to them. Constructive notice of the will, arising from the fact that it is a public record, extends only to persons acquiring rights or titles which are in some way resting on, or subordinate to, or affected by, the will, and does not extend to those acquiring titles wholly independent of and superior to the will. And again, if the public record of the will were constructive notice of its existence and terms to Hill and Taylor, still it would not be sufficient, for the charge is that they *fraudulently concealed* their knowledge of it, which implies *actual* and not *constructive* knowledge. There can be no fraudulent concealment of a fact of which a party has only constructive or presumptive knowledge, where the absence of actual knowledge is positively proven, as in this case.

The second proposition is answerable in the same way; it is at most constructive notice only. And again, while the general rule is that a party is held to have constructive notice not only of all that appears in the deeds constituting his chain of title, but also of all that appears in all other deeds and instruments recited or referred to in them as being connected with, or as limiting or affecting the title or property conveyed; yet, there are exceptions to the rule, and it does not, in principle, apply to collateral and immaterial conveyances or

instruments incidentally referred to, not as relating in any way to the title or property conveyed, but only to the consideration. Bigelow on Estoppels, p. 341, *et seq.;* 2 Devlin on Deeds, §§ 1000, 1006.

There is nothing in the deed of the Hayses to Hewett, for the land in controversy, to indicate that the deed therein referred to as having been made by him to them for the Arkansas plantation, has any bearing whatever upon the title conveyed to him. It is merely mentioned as a part of the consideration.

It is further insisted for complainant that the effect of the foreclosure sale, and purchase by Hill and Taylor, under the facts and circumstances, and especially in view of the previous understanding with Hewett and their subsequent acceptance of a deed from him, was the same as if Hewett had himself paid off the incumbrance, or had himself purchased at the sale, and then conveyed to them, and that the title acquired by Hill and Taylor must be restricted to that which Hewett acquired by his deed from the Hayses.

This contention is based upon the assumption that the conveyance from the Hayses to Hewett, was only of the life estate of Mrs. Hays and the supposed interest or expectancy of Samuel J. Hays under the will of Mrs. Walker; and it is argued that the effect of the conveyance was to make Hewett tenant for life of the whole land, and tenant in common with James W. and John M. Hays of the remainder.

38

The position is untenable for several reasons. The deed does not purport to convey a life estate, or interest in common, or any thing less than the whole fee. The vendors covenant that they are seized of the whole estate in the land, and warrant the title against all persons. They also covenant against all incumbrances except those specified. There is no proof that as matter of fact the deed was intended to operate to pass less than the whole fee. Under these circumstances, Hewett's assumption of the incumbrance on the land ought not, at most, to be extended beyond the indemnity of his vendors. Finding that he had obtained under the deed less than he had bargained for, and less than it purported to convey to him, it is at least questionable whether he might not have purchased at the foreclosure sale himself for his own benefit, and thereby perfected his title as against those interested who had not joined in the deed to him. There was no privity of contract between him and them. If there was any privity of estate, it was technical and *in invitum.* Certainly he did not owe it to them to pay the incumbrance for the protection of their interests. But at all events, the obligations of life tenant to remainderman, and of one tenant in common to another, do not arise on the face of this deed.

Again, the conveyance of the Hayses could not have operated as argued, so far, at least, as to create the relationship of tenancy in common, for the reason that Samuel J. Hays was not seized as

tenant in common, but only as a member of a fluctuating class, with no particular or fixed interest.

Again, neither the deed of the Hayses to Hewett, nor Hewett's deed to Hill and Taylor, as has been seen, are necessary to the latter's title. They do not have to rely on them at all. Their title under the trust sale and conveyance was perfected before Hewett's deed was made to them, and by no principle can the latter deed operate *ex post facto* to cut down their previously acquired good title to the limits of the imperfect title held by Hewett.

And lastly, upon the whole facts and circumstances, it is clear that the purchase of Hill and Taylor at the trust sale was made for themselves, and not under or for the benefit of Hewett. They were under no legal obligation to buy the land, either at the sale or from Hewett. They had the right to buy for themselves as fully as did others who attended the sale and bid. The sale was in all respects open and fair. Having bid the highest price offered, paid it, and taken the trustee's deed, the fact that they chose to pay Hewett an additional sum, and accept a deed from him, in pursuance of a previous verbal agreement with him to do so in case they became the purchasers at a figure that would justify them in so doing, cannot be held to vitiate their purchase, and destroy their deed from the trustee as a muniment of title, proceeding from the maker of the deed of trust.

There being, then, no defect in Hill's title at the time of his sale to the complainant Land Company,

it follows that even if the latter had made its purchase on the faith of his representation that his title was good, it would not show fraud, for the double reason that such representation would have been true, and have produced no injury. But it very clearly appears that complainant did not act upon any representation of Hill in respect to the title, but investigated the same for itself upon an abstract furnished by a regular abstract company of the city of Memphis, which purported to exhibit the entire record of the title, beginning with the conveyance to Mrs. Walker, in 1844. This abstract was submitted by complainant to learned counsel, of its own selection, for his examination and opinion. He gave a carefully prepared and elaborate opinion in writing, approving the title as good and perfect, and on the faith of that complainant made the purchase.

In this opinion, after a reference to the deed made to Hill and Taylor by the trustee, the learned counsel adds, "But outside of the title derived from the sale under said trust deed, on March 6, 1877, Elizabeth M. Hays, whom I understand to be the only child and heir at law of Mary Ann Walker, who died in 1873, together with her husband, A. J. Hays, sold and conveyed the forty-four acres to Chas. Hewett, subject to the foregoing trust deed. * * . * This deed conveyed a good title to the forty-four acres to Chas. Hewett, subject to the incumbrance of the deed of trust to Wellford, and subject to whatever debts Mary Ann

Walker may have owed at her death, *she dying intestate.*"

The abstract of title contained no reference to the will of Mrs. Walker, and it is very clear that Hill had no knowledge of such a will until after his sale and conveyance to complainant, so that, even if the will were material to the title, Hill was guilty of no misrepresentation in regard to it.

The result is, we hold that the Chancellor's view of the case is correct, and it is, therefore, unnecessary to consider the other question suggested at the outset.

Affirm the decree with costs.