McElya v. Hill.

(*Jackson.* April 12, 1900.)

1. CHANCERY PLEADING AND PRACTICE. *Jury trial.*

Issues upon which, under a proper practice, jury trial may be demanded and obtained in the Chancery Court are such as go severally to the decision, upon its merits, of the whole case. Issues that go to incidental or collateral questions, or involve mere matters of evidence, should not be submitted to jury trial as distinct propositions. (*Post, pp. 323–325.*)

Code construed: § 6285 (S.); § 5218 (M. & V.); § 4468 (T. & S.).

Case cited: Connor *v.* Frierson, 98 Tenn., 183.

2. SAME. *Same. Example.*

For example, it is proper and sufficient to submit the single issue, "was there or not fraud in the sale," where a vendee demands jury trial, under a bill seeking rescission of his purchase of land for the vendor's fraud; and it is not error for the Chancellor to strike out, as immaterial and confusing, additional issues whose determination would not be decisive of the whole case. (*Post, pp. 325–327.*)

Code construed: § 6285 (S.).

3. SAME. *Same.*

It is not objectionable that an issue upon which jury trial is demanded in a chancery cause involves a mixed question of law and fact. Such issues are triable by jury. (*Post, pp. 325–327.*)

Code construed: § 6285 (S.); § 5218 (M. & V.); § 4468 (T. & S.)

Cases cited: Memphis, etc., Gas Co. *v.* Williamson, 9 Heis., 340; Whirley *v.* Whiteman, 1 Head, 617.

4. SAME. *Same.*

The verdict of a jury in the Chancery Court has the same force and effect as a verdict in a law Court, and will not be set aside if there is any material evidence to support it. (*Post, p. 332.*)

Code construed: § 6286 (S.); § 5219 (M. & V.); § 4469 (T. & S.).

Case cited: Scruggs *v.* Heiskell, 95 Tenn., 455.

5. RESCISSION. *For fraud.*

Extravagant representations or expressions of opinion by the

McElya *v.* Hill.

vendor in effecting sale of property—*e. g.*, a boarding house—as to the value of the property, and as to the vendee's ability to fill it with boarders, and as to the profits to be realized therefrom, do not constitute fraud that justifies rescission. (*Post, pp. 327, 328.*)

Case cited: Maney *v.* Porter, 3 Hum., 347.

6. SAME. *Same.*

The fact that property was sold at a grossly exorbitant price is a circumstance that may be looked to in support of the vendee's claim for rescission on account of the vendor's fraud. (*Post, pp. 327, 328.*)

7. SAME. *For defective title.*

The vendee is not entitled to rescission on account of defective title or the existence of incumbrances thereon, in the absence of fraudulent concealment of the facts, when the vendor is able to make or tender a perfect title, free from incumbrances, at or before the date of final decree. (*Post, pp. 329–332.*)

Cases cited: Baker *v.* Shy, 9 Heis., 89; Topp *v.* White, 12 Heis., 175.

8. SAME. *Same.*

The vendee's remedy for defective or incumbered title, in the absence of fraudulent concealment of the facts, or the insolvency of the vendor, is not rescission, but an action upon the covenants of his deed where the contract is an executed one. (*Post, pp. 329–332.*)

Case cited: Land Co. *v.* Hill, 87 Tenn., 598.

9. CHARGE OF COURT. *Stating the issues.*

It is not improper or erroneous for the Court, in his charge to the jury, to refer to and set out the contentions of the respective parties and to say that the verdict should be in favor of that party whose contention is sustained, in the opinion of the jury, by a preponderance of the evidence. (*Post, p. 328.*)

FROM CARROLL.

Appeal from Chancery Court of Carroll County. A. G. HAWKINS, Ch.

J. M. TROUTT and J. T. PEELER for McElya.

Jo. R. HAWKINS for Hill.

McALISTER, J. This bill was filed for the rescission of a sale of land.

On the 8th of July, 1896, Jno. C. Hill and wife executed a deed to the complainant, Mrs. M. C. McElya, for a house and lot in Huntingdon at the price of $1,500. Complainant paid $800 in cash, and for the balance of purchase money executed two notes, each for the sum of $350, payable in one and two years respectively. The first note was credited by the sum of $130, the value of a horse and wagon which defendants accepted in part payment of the note. Shortly after the purchase complainant went into possession of the property.

On the 27th of October, 1897, after the maturity of the first note and fifteen months after the purchase, complainant filed this bill seeking a rescission upon the ground of fraud in the sale. She charged that defendants were occupying the property as a boarding house; that complainant had purchased the property in order to enter upon the same business, and that it was a condition of the contract of purchase that defendants should not · carry on the same business in the town of Huntingdon; that they would assist complainant in securing boarders and lend her their influence. The bill alleged that defendants, in

21 P—21

violation of this stipulation of the contract, had immediately opened another boarding house. It was also alleged that defendants contracted to furnish the rooms on the second floor, which they had failed to do. Another allegation was that defendants had grossly misled and deceived complainant in respect of the value of the property. Complainant further charged that when the deed to the property was delivered to her she objected. to it because it did not contain all the stipulations of the contract, but she was assured by the defendant that his word was as good as his bond and that he would faithfully comply with his. agreement. Complainant charged that defendant had breached the contract and had practiced a great fraud upon her.

Defendants answered the bill, denying all the allegations of fraud and averring a full compliance with the contract, denying any agreement to abandon the boarding house business, and averring that the property was fully worth the price agreed to be paid.

Defendants on same day filed an original bill against complainant and the surety on the notes. for the collection of the balance of the purchase money and the enforcement of vendor's lien. The two causes were consolidated and heard together.

A jury was demanded by complainant's solicitor, who formulated twenty issues to be submitted for their determination. The record recites "the Court.

McElya *v.* Hill.

was pleased to disallow all of the issues submitted on behalf of Mrs. McElya, and of his own motion formed three issues to be submitted to the jury on the trial of this cause."

Complainant's solicitor excepted to the action of the Court in disallowing nineteen of the issues submitted by him, and further he excepted to the last two issues formulated by the Court. There was no exception to the first issue formulated by the Court, which was, viz.:

"Was the sale and conveyance of the land set out in the pleadings in these causes by Jno. C. Hill and wife to M. C. McElya fraudulent?"

This was the only issue summitted to the jury, and under the charge of the Court a verdict was rendered that the sale was not fraudulent. On this verdict the Court pronounced a decree in favor of the defendants and rendered judgment for balance of the purchase money.

Mrs. McElya appealed and has assigned errors.

The first assignment is that the Court erred in not submitting to the jury the nineteen issues of fact presented by complainant's solicitor.

It has been held that an issue should not be directed on a question the decision of which is immaterial or unessential to the determination of the suit. Where the issues are very numerous or very minute, or so grouped that confusion and mistake by a jury may be expected, the Court should decide them itself and not send them to a

jury. Encyclopedia Pleading and Practice, Vol. 11, p. 632. Thus it is held in Massachusetts that, even if a party has a statutory right to trial by jury in an equity case, it is only in regard to those. controverted facts which are essential to the decision of the whole case. And whether the facts are so essential or material is to be determined by the Court. *Charles River Bridge* v. *Warren Bridge,* 7 Pickering (Mass.), 344. So in Delaware it was held that the Act which directs issues of fact in a chancery case to be tried by a jury must be understood as referring only to issues of fact which involve the merits of the case and are material to the decision of the cause, and the Chancellor is not bound to order issues to be tried by a jury unless they are thus material. *Walers* v. *Comly,* 3 Harr. (Del.), 127; *Connor* v. *Frierson,* 14 Pickle, 183.

We have carefully examined the nineteen issues tendered by complainant's solicitor, and find that many of them were wholly immaterial and that none of them went to the whole case. The gravamen of complainant's suit for rescission was fraud, which question was to be determined upon a consideration of all the facts and circumstances in the case. Complainant's counsel sought to make every fact tending to show fraud the basis of a separate issue, thus indefinitely multiplying the issues to the dismay and confusion of the jury,

when the whole evidence could be considered under the issue, Was there or not fraud in the sale?

The second assignment is that the Chancellor erred in submitting to the jury, on his own motion, an insufficient issue which raised a mixed question of law and fact.

Section 6285, Shannon's Code, provides, viz.: "The issues shall be made up by the parties under the direction of the Court and set forth briefly and clearly the true questions of fact to be tried."

It is true that when the Chancellor declined to submit the multitude of issues tendered by complainant's solicitor, he then proceeded to formulate three issues which he thought went to the whole case. Complainant's solicitor objected to the last two, but did not object to the first issue. Thereupon the Chancellor withdrew the last two and submitted only the first issue, which was, viz.: "Was the sale and conveyances of lands set out in the pleadings in this cause by Jno. C. Hill and wife to Mrs. M. C. McElya fraudulent?"

It is objected now, for the first time in this Court, that this issue raises a compound question of law and fact which was improper for the consideration of the jury. Such mixed questions of law and fact frequently arise and are constantly passed on by juries. Questions of negligence and of probable cause in actions for malicious prosecution are mixed questions of law and fact, yet they are

passed on by juries almost daily in our Circuit Courts. In *Memphis Gayoso Gas Co.* v. *J. M. Williamson,* 9 Heis., 340, Chief Justice Nicholson said, viz.: "Whenever an action of this kind is commenced and a plea of not guilty is interposed, the jury are to try the question of probable cause, and it is a question then compounded of law and fact. The jury are to decide it as any other question under the direction of the Court as to the law. They judge of the facts for themselves and receive the law from the Court." In the case of *Whirley* v. *Whiteman,* 1 Head, 617, which involved a question of negligence, Judge McKinney, in referring to the mode of trying cases consisting of both law and fact, says, viz.: "The truth of the facts and circumstances offered in evidence in support of the allegations on the record must be determined by the jury, but it is for the Court to decide whether or not these facts and circumstances, if found by the jury to be true, are sufficient in point of law to maintain the allegations in the pleadings. And this must be done in one or two modes—either the Court must inform the jury hypothetically whether or not the facts which the evidence tends to prove will, if established in the opinion of the jury, satisfy the allegations, or the jury must find the facts specially, and then the Court will apply the law."

In the present case the Chancellor adopted the former method, and in his charge to the jury

submitted hypothetical statements of the facts which the evidence tended to prove and the law applicable to such facts, but left the settlement of the facts exclusively to the jury. This is the usual practice, which, as seen, is sanctioned by the authorities.

The fourth assignment of error is that the Court erred in the following instruction to the jury, viz.: "In this connection you are instructed that representations, if they are shown to have been made, as to the value of the property out of which this controversy has grown, as to the profits of keeping boarders, and as to whether Mrs. McElya could fill her house with boarders, or expressions of opinion as to the same, although the same may have been extravagant, will not amount to a fraud." *Maney* v. *Porter,* 3 Hum., 347. It is insisted this was an error, for the reason that the value of the property was one of the main issues; that Hill represented it to be worth $1,500, when it was worth only about $800 or $900. The Court immediately followed the above instruction with this statement of the law, viz.: "It is material in this case that you shall consider the question as to the value of the property sold and purchased at the time of the sale with a view of determining the truth as to the issue submitted. If it should appear that the property in question was sold to Mrs. McElya at a grossly exorbitant price, that is greatly in ex-

cess of its real value, then this is a circumstance to which you will look with a view of determining the question whether the sale was fraudulent or not; but in order that the price to be paid can be so considered, it must appear that the amount was grossly exorbitant." This is a correct proposition, and it fully meets the objections now urged to the instruction which is made the basis of this assignment of error.

The sixth assignment of error is that the Chancellor erred in the following instruction, viz.: "If you find the fact to be as insisted upon by counsel for Mrs. McElya, as heretofore in these instructions explained to you, you should find the issue in the affirmative; that is, the sale and conveyance was fraudulent. If, however, you shall find the facts to be as insisted upon by defendant's solicitor, as heretofore explained in these instructions, you will find the issue in the negative."

It is said this was error for the reason that the insistances of the respective counsel were not evidence. If this had been said by the Court, we agree with counsel that it would have been erroneous. But it will be observed that when the Court speaks of the contentions of counsel it is coupled with the words, "as heretofore in these instructions explained to you." The Court clearly had reference here to his hypothetical statements of the contentions of both sides.

The seventh assignment of error is that the

Court declined to let the issue of solvency or insolvency of defendant, Hill, at the time the bill was filed to be submitted to the jury. This was a controverted proposition in the proof. The issue was material in one aspect of the case, for the rule is that a purchaser, after deed made, in the absence of fraud, concealment, or misrepresentation, has no remedy except upon the covenants in the deed, unless the seller is insolvent. *Land Co. v. Hill,* 87 Tenn., 598. The question of solvency, then, simply goes to the remedy. The bill in this case was not demurrable, for there was an allegation of insolvency.

If the covenants of the deed of warranty, seizin, right to convey or against incumbrances be broken and the grantor is insolvent, a Court of equity may restrain him from proceeding to collect the whole amount due for the purchase money, and may offset the damages occasioned by the breach of the covenants against such unpaid purchase money. *Young* v. *Butler,* 1 Head, 647.

On the subject of defective title and incumbrances the Court charged the jury, viz.: "It is insisted by counsel for Mrs. McElya that at the time of the sale of the property in controversy to her, a portion thereof was incumbered by a mortgage to the Southern Building and Loan Association and the balance thereof by mortgage to the Huntingdon Building and Loan Association; that the deeds to Hill had not then been recorded,

and that the vendor, Jno. C. Hill, concealed from her the existence of such mortgages, and that she had no knowledge as to the liens created by said mortgages, etc., and that because of the failure on the part of said defendants to make known these facts to her, and concealment thereof, that the sale to her was fraudulent. If these facts are made to appear by a preponderance of the evidence, etc., this would be a fraud against Mrs. McElya, and you should so find in your verdict. If, however, you shall find that Mrs. McElya was informed by W. T. Baber, prior to the closing of the trade, that the portion of the property in controversy which he had previously conveyed to Jno. C. Hill was incumbered by a mortgage to the Huntingdon Building and Loan Association, which he was under agreement to satisfy, and that he would take steps to have the incumbrance removed, and that shortly thereafter he did so and procured a release from the building association by giving a mortgage on other property and procuring from the association, through its secretary, a release of the mortgage, the fact that the mortgage was unsatisfied at the date of the deed to Mrs. McElya would not in law amount to fraud.

"If you shall find that at the date of the conveyance to Mrs. McElya that Hill and wife were of opinion that the mortgage to the Southern Building and Loan Association had been satisfied, and that as to this they were mistaken, the fact

McElya *v.* Hill.

being that it was then unsatisfied, the failure to inform her (Mrs. McElya) of this mortgage would not amount to a fraud. Or if you shall find that the mortgage to the Southern Building and Loan Association was paid off and discharged by the witness, Teachout, but the date of the pay-. ment not appearing, you are instructed that before Mrs. McElya can have relief on the ground of the failure to advise her of the existence of this mortgage, it would devolve on her to show that the mortgage was outstanding at the date of sale to her, and that if she has failed to do so she can have no relief on account of said mortgage."

It will be observed that the Chancellor in these instructions submits to the jury the question whether defendants concealed the said incumbrances from complainant at date of sale, proceeding alone upon the theory of fraud. But as we have already seen, a purchaser may be entitled to relief, in the absence of fraud, where the title is defective or the land incumbered and the vendor wholly insolvent. The Chancellor in his original charge ignored this aspect of the case, and there was no request from complainant's counsel for such an instruction, although fourteen supplemental requests were submitted by him. We are of opinion, however, upon examination of the record, that such an instruction would have been immaterial, since the proof shows that both of said mortgages have been satisfied. It is wholly immaterial whether

they were satisfied prior or subsequent to the date of the deed from Hill and wife to Mrs. McElya. They were not incumbrances on the property at the date of the decree below. It has been held, in a case where rescission was asked upon the ground of a defective title, the vendor would be allowed a reasonable time to perfect his title, and if the after-acquired title be a good one, and there is no fraud, the complainant will be compelled to accept it. *Baker* v. *Shy,* 9 Heis., 89; *Topp* v. *White,* 12 Heis., 175. It is further assigned as error that the Court declined to charge fourteen supplemental requests submitted by complainant's solicitor. We have carefully examined these requests and find that most of them had been substantially charged and the remainder were properly refused.

In conclusion, we find the verdict of the jury and the charge of the Court are amply supported by the evidence.

Where a chancery cause is tried by a jury the verdict has the same force and effect as a verdict in a law cause, and will not be disturbed on appeal if there is any material evidence to support it. *Scruggs* v. *Heiskell,* 95 Tenn., 455; Shannon's Code, § 6286.

Affirmed.