## MATTHEWS *v.* CROWDER.

'(*Jackson.*    April Term, 1902.)'

1. **VENDOR AND PURCHASER.** Remedy of purchaser, against insolvent vendor warranting title—Rescission.

   Where there has been a fully executed sale of land, by deed containing full covenants of warranty and seizin, with possession, and payment by the vendee of the purchase money, and, it afterwards appear that the vendor did not have the estate and title which he represented himself as having, the vendee before eviction can not ordinarily maintain an action against the vendor for a rescission of the sale, for a mere breach of a warranty of title, but if the vendor is insolvent the vendee may maintain in suit in equity and have a decree for rescission, though not evicted.    (*Post, p.* 740.)

   Cases cited:   Young v. Butler, 1 Head, 640; Crawford v. Keebler, 5 Lea, 550; Merriman v. Norman, 9 Heis., 270; Land Company v. Hill, 87 Tenn., 598; McElya v. Hill, 105 Tenn., 329.

2. **SAME.** Covenants of seizin and warranty—Remedy for breach of, against insolvent vendor.

   If the vendor's deed contains a covenant of seizin, it is an assurance to the vendee that the vendor has the very estate and title both in quantity and quality that he purports to convey.   It is a personal covenant *in praesenti,* and if untrue, it was breached the instant it was made, and the vendee, without reference to the matter of evictions, may bring his action at law for damages for the breach, or in equity for a rescission against an insolvent vendor.'   (*Post, pp.* 740-741.)

   Cases cited:   Curtis v. Brannon, 98 Tenn., 153; Ingram v. Morgan, 4 Humph., 66; Woods v. North, 6 Humph., 309; Barnett v. Clark, 5 Sneed, 437; Baird v. Goodrich, 5 Heis., 24; Land Co. v. Hill, 87 Tenn., 598; McElya v. Hill, 105 Tenn., 329.
   111 Tenn—47

Matthews v. Crowder.

3. **SAME.** Vendor a trustee for vendee—Trust follows consideration paid vendor into other land.

Where a vendor of land has received the vendee's notes for the purchase price, and whose covenants have been so breached as to warrant a rescission, in equity, the vendor will be treated as trustee of the notes for the benefit of the vendee; and if the vendor has used the notes in the purchase of other land in his own right, and the vendee has paid the notes, he may on rescission follow the notes, as a trust fund, into the land, and, by decree, have it subjected to a reimbursement. (*Post, pp.* 741-745.)

4. **SAME.** Same. Case in judgment.

The defendants sold to complainant a certain tract of land conveying by deed containing full covenants of warranty and seizin. Complainant executed his notes for purchase price which defendants transferred for other land taking title thereto. Complainant paid the notes. Defendants had no title to the land sold complainant, excepting a life estate, and they were insolvent. Complainant filed bill for rescission, and to have trust declared for purchase price paid by him upon the aforesaid life estate and tract purchased by defendants from third party.

*Held:* That complainant was entitled to a rescission, and to a recovery of the purchase money paid by him to be satisfied by sale of the life estate, and of the land purchased by defendant from third party.

---

FROM GIBSON.

---

Appeal from Chancery Court of Gibson County. —JOHN S. COOPER, Chancellor.

TAYLOR & BIGGS, for Matthews.

SPL. HILL, for Crowder et al.

MR. JUSTICE CALDWELL delivered the opinion of the Court.

This is a bill to rescind an executed sale of land. On the 18th of April, 1899, Daniel Crowder and his wife sold 16 2-3 acres of land to W. F. Matthews for the sum of $300. All parties believed, and Crowder and wife represented, that they owned the land absolutely in fee. Their deed of conveyance to Matthews was absolute in terms, and contained full covenant of seisin and warranty of title. For the consideration Matthews executed two promissory notes, which Crowder and wife assigned to J. F. Bailey in the purchase of another tract of land, which contained 35 acres, and Matthews paid the notes.

In October, 1899, Matthews discovered that Crowder and wife had misrepresented their title; that they in fact had only a life estate in the land sold to him as aforesaid; and because of that fact, and the further fact that Crowder and wife were insolvent, Matthews, on the 16th day of that month, brought this bill, seeking a rescission. He offered to restore the tract he had purchased, and sought a recovery for the $300 paid; and to satisfy that recovery, if not otherwise paid, he sought to have both tracts sold, first the life estate in the 16 2-3 acres, and then the 35 acres, if necessary. Crowder and wife, by answer and agreement, conceded the facts just

narrated, but denied as a matter of law that Matthews was entitled to a rescission before eviction and they denied further that he was entitled to subject the 35 acres of land, even though the other relief sought should be allowed. The chancellor granted the prayer of the bill. Crowder and wife appealed, and by assignments of error they raise the same legal questions made by them below.

1. The decree is correct. It is true the vendee in an executed sale of land cannot, before eviction, maintain a suit to rescind for a mere breach of the warranty of title, for in that case he is presumably protected by that covenant in his deed; but when insolvency of the vendor, as in this instance, is superadded to such breach, that protection is dissipated, and the vendee, in consequence thereof, may have a decree for rescission, though not yet evicted. *Young* v. *Butler,* 1 Head, 640; *Crawford* v. *Keebler,* 5 Lea, 550; *Merriman* v. *Norman,* 9 Heisk., 270; *Land Co.* v. *Hill,* 87 Tenn., 598, 11 S. W., 797, 5 L. R. A., 45; *McElya* v. *Hill,* 105 Tenn., 329, 59 S. W., 1025; 18 Enc. Pl. & Prac., 770.

2. This deed contains also a covenant of seisin, which is an assurance to the vendee that the vendors have the very estate, in quantity and quality, that they purport to convey, namely, 16 2-3 acres of land in fee. Being a personal covenant *in praesenti,* and being untrue, in that the covenantors in fact had only a life estate in the land, it was breached the instant it was made, and the covenantee therefore at once, and without reference to the

matter of eviction, became entitled to his action for the breach, either at law for damages or in equity for rescission. The breach alone authorized an immediate suit at law, and the breach, together with the insolvency of the vendors, authorized an immediate suit in equity, if, indeed, the insolvency was necessary for the latter. *Curtis* v. *Brannon,* 98 Tenn., 153, 38 S. W., 1073, and citations; *Woods* v. *North,* 6 Humph., 309, 44 Am. Dec., 312; *Ingram* v. *Morgan,* 4 Humph., 66, 40 Am. Dec., 626; *Barnett* v. *Clark,* 5 Sneed, 437; *Baird* v. *Goodrich,* 5 Heisk. 24; *Land Co.* v. *Hill,* 87 Tenn., 598, 11 S. W. 797, 5 L. R. A., 45; *McElya* v. *Hill,* 105 Tenn., 329, 59 S. W., 1025.

3. The object and result of every decree of rescission is to put the parties as nearly *in statu quo* as possible without injury to innocent third persons. *Curtis* v. *Brannon,* 98 Tenn., 161, 38 S. W., 1073, and authorities cited. That object and result are to be accomplished, under the facts of this case, by the court's direction, in the first instance, that the vendee restore the land received, and the vendors the money paid; and, in the second instance, if the money be not restored by payment into court within a given time, that the life estate in the 16 2-3 acres, and, if necessary, the fee in the 35 acres, be sold to raise the amount of the money recovered. If the notes executed by Matthews to Crowder and wife were still in their hands and unpaid, the *status quo* could be restored by a mere restoration of the land con-

veyed to Matthews and a cancellation of the deed and the notes.

But the notes were assigned to Bailey in the purchase of the 35-acre tract, and have been paid in full to Matthews. This being true, and the 35 acres being still in the possession and ownership of Crowder and wife, a court of equity will treat this land as the representative of the notes, and in that view will subject it to sale for his reimbursement so far as not otherwise made. Having obtained the notes upon the faith of such a misrepresentation as justifies this proceeding for rescission, Crowder and wife will be justly regarded as trustees, or quasi trustees, for the benefit of Matthews, the maker; and the notes, like any trust fund, can, under familiar equitable principles, be followed by him into the land purchased therewith. The subjection, in the first place, of the life estate in the 16 2-3 acres, is but the ordinary equitable relief granted in rescission for the reimbursement of the vendee who has paid the price of the land sold; and the supplementary subjection, in the second place, of the 35 acres purchased with his notes, results from the rule that the parties whose contract is rescinded may be placed as nearly *in statu quo* as possible without injury to innocent third persons, and also from the doctrine that a *cestui que trust* may follow the trust fund wherever he may be able to trace it, except in the hands of innocent third persons.

In his classification of constructive trusts Perry uses this language, viz.: "Third. Trusts that arise from

Matthews v. Crowder.

some equitable principle, independent of the existence of any fraud; as, where an estate has been purchased, and the consideration money paid, but the deed is not taken, equity will raise a trust by construction for the purchaser." 1 Perry, Trusts, section 168, at close. That is, equity in such a case will regard the vendor as the trustee of the legal title of the land for the benefit of the vendee. On the same or like principle equity will treat a vendor of land, who has received the vendee's notes for the price, and whose covenants have been so breached as to warrant rescission, as trustee of the notes for the benefit of the vendee; and, if such vendor uses the notes in the purchase of other land in his own right, and the maker pays them, he may, on rescission, follow the notes, as a trust fund, into that land, and have it subjected to sale for his reimbursement. No more can the vendor in such a case hold other land so purchased against his vendee's decree in rescission than he could hold the notes themselves against such a decree, for the land, under those circumstances, is, in legal contemplation, but the representative of the notes, or a substitute for them. Equity would not permit the retention of the notes. It will not permit the retention of the land purchased with them, unless their maker be first indemnified by the payment of his money recovery.

Pomeroy thinks the case put by Perry is more like an express trust. He observes: "It is commonly said that a trust is created by a contract for the sale of land; that the vendor holds the legal title as a trustee for the

purchaser. Whatever of truth there is in this mode of statement, whatever of a real trust relation exists, it certainly has nothing in common with constructive trusts; it rather resembles an express trust." 2 Pom., Eq. Jur., section 1046.

Which of these two eminent authors is the more accurate in his classification need not be here considered. It is sufficient for present purposes that the relation they mention and its equitable result furnish an analogy for the case under consideration, as has been seen already. In section 1044 Pomeroy says: "Constructive trusts include all those instances in which a trust is raised by the doctrines of equity for the purpose of working out justice in the most efficient manner where there is no intention of the parties to create such a relation, and in most cases contrary to the intention of the one holding the legal title, and where there is no express or implied, written or verbal, declaration of the trust."

The generality of that statement, which is amply justified by the other text-writers on equity jurisprudence and the adjudged cases, embraces the present case. Here are insolvent vendors of land, who have breached the vital covenants of their deed, in possession, first, of their vendee's notes for the purchase money, and then of other land purchased with those notes, since paid by their maker, the misled and damaged vendee. He who has really paid for this other land has it not; and they, who have in fact not paid for it, have it. In ultimate

effect the money of Matthews has been invested in this other land, and the title has been taken to Crowder and wife. The advantage the latter persons have on the face of the transaction is unconscionable. It is just such an advantage as a court of equity always delights to circumvent by raising a trust in favor of the other person "for the purpose of working out justice in the most efficient manner."

Let the decree be affirmed.