## GUARANTEE & TRUST CO. *v.* JONES.

### (*Jackson.* June 10, 1899.)

1. FOREIGN CORPORATION. *Mortgage of, taken before qualification validated, when.*

   A mortgage taken by a foreign corporation before it has qualified to do business in the State, is validated by subsequent registration of its charter in the office of the Secretary of State and of abstract thereof in the county where the land is situated, as required by the curative Act of 1895, and the mortgagee may enforce same for the amount of money actually loaned, with six per cent. interest. (*Post, p. 250.*)

   Act construed: Acts 1895, Ch. 119.

   Case cited and approved: Butler *v.* Association, 97 Tenn., 679.

2. WILL. *Gives absolute power of disposition.*

   Under a will devising lands to the children of two of testator's sons, and providing that the two sons, respectively, shall "have the power to sell or convey, by deed or otherwise, or to dispose of the land in any way they see proper, for the benefit of their children, they, my [his] two sons, being the judges of what is best for their children," the two sons take an absolute power of disposition, not incumbered with any sort of trust in favor of testator's grandchildren, and may mortgage the property to raise money for any purpose they may choose, especially where no fraudulent purpose is entertained by the mortgagors, or, if entertained, not disclosed or known to the mortgagee. (*Post, pp. 251–257.*)

   Cases cited: Webster *v.* Helm, 93 Tenn., 325; Steifel *v.* Clark, 9 Bax., 470; Bostick *v.* Winton, 1 Sneed, 524; 136 Pa. St., 367; 116 Pa. St., 547; 147 Mass., 616; 37 Hun, 476.

3. MORTGAGES AND DEEDS OF TRUST. *Recital of power to make.*

   And, in such case, it is not essential that the mortgage should recite or refer to the power in the will pursuant to which it is made. (*Post, pp. 254–256.*)

Guarantee and Trust Co. *v.* Jones.

Cases cited and approved: Young *v.* Mutual Ins. Co., 101 Tenn., 311; Pate *v.* Pierce, 4 Cold., 113; 134 U. S., 572; 56 Minn., 216; 33 N. Y., 383.

4. TRUSTS. *Application of proceeds of trust property.*

Nor, in such case, is the mortgagee under obligation to see to the proper application of the money borrowed on the mortgage. (*Post, p. 256.*)

Cases cited: Young *v.* Mutual Ins. Co., 101 Tenn., 311; Williams *v.* Otey, 8 Hum., 563; Loughmiller *v.* Harris, 2 Heis., 553; Harris *v.* Smith, 98 Tenn., 286; Brown *v.* Foote, 2 Tenn. Ch., 225.

FROM HAYWOOD.

Appeal from Chancery Court of Haywood County, J. S. COOPER, Ch.

SMITH & TREZEVANT for Guarantee and Trust Co.

J. W. E. MOORE for Jones.

McALISTER, J. Complainant filed this bill in the Chancery Court of Haywood County to foreclose a deed of trust. This instrument was executed on the 1st of October, 1891, by H. F. Jones and wife and J. W. Jones to Samuel M. Jarvis, trustee, conveying certain lands in Haywood County to secure a note for $5,650 and interest for a loan that day made by the Jarvis-Conklin Mortgage Trust Company. The note and mortgage were afterwards—to wit, on the 15th of October, 1892—assigned to complainant, a London

corporation. The land embraced in the deed of trust had been devised by Mrs. Elizabeth Jones, deceased, under the following will:

"Know all men, that I, Elizabeth Jones, being of sound mind, do make this, my last will and testament. My daughter-in-law, Ellen Jones, having an equitable right to two-fifths of my landed estate, I therefore make her a legal right to the same two-fifths of my land. The other three-fifths I divide between my grandchildren, giving the children of my son, J. W. Jones, three-tenths, and to children of my son, H. F. Jones, three-tenths, my two sons, J. W. and H. F. Jones, to have the power to sell or convey, by deed or otherwise, or to dispose of the land in any way they see proper, for the benefit of their children, they, my two sons, being the judges of what is the best for their children—that is, my son, J. W. Jones, has the power to dispose of the land I give to his children, and my son, H. F. Jones, has the power to dispose of the land I give his children. All the personal property I have, I give in the same way as I give my real property."

It will be observed that the deed of trust was executed by H. F. and J. W. Jones, the fathers of the infant devisees.

It is alleged in the bill that the Jarvis-Conklin Mortgage Trust Company is a foreign corporation, with its *situs* in Kansas City, Mo., and

that it filed its charter with the Secretary of State at Nashville, Tenn., on March 30, 1892, and that it filed an abstract thereof in the office of the Register of Haywood County on August 16, 1895, but it is admitted that at the time the loan was made it had done neither. It is further shown in the bill that the grandchildren of the testatrix, at the time of the execution of the deed of trust, were minors.

The defendants demurred to the bill, assigning, among others, the following grounds, to wit:

*First.*—That under said will an absolute title to three-tenths of said land vested in the children of H. F. Jones and three-tenths of same vested in the child of J. W. Jones, and that said deed of trust was nugatory and inoperative so far as the same might affect said interests.

*Second.*—That H. F. and J. W. Jones had no right or power to make the deed of trust as to six-tenths interests of said grandchildren.

*Third.*—That said deed of trust only undertook to convey the individual interests of said H. F. Jones and wife, Ellen, and J. W. Jones in said land, and did not undertake to convey, and was not intended to convey, the six-tenths interest of the grandchildren.

The Chancellor overruled the demurrer, but permitted defendants to rely upon said causes in their answer. Defendants answered the bill. The grandchildren, who were minors, answered through

their guardian *ad litem*, averring they knew nothing of such deed of trust or its alleged assignment to complainant. They relied upon the demurrer theretofore filed, and insisted that if any power was created by said will in H. F. and J. W. Jones, it was only for the benefit of their children, and that the deed of trust could not have been for the benefit of the children; that it did not recite that it was for the benefit of the children, and that the will is not even referred to; and that, as a matter of fact, the children received no benefit whatever from the deed of trust. It is insisted that if H. F. and J. W. Jones had any right or power to convey the interests of their children in said lands, it was under said will, and the power should have been recited in the deed of trust.

It is alleged that said deed of trust was made by said H. F. and J. W. Jones for their own benefit, and they received the money and used it for their own purposes, and said grandchildren were in no way benefited thereby.

Proof was taken, and on the final hearing the Chancellor decreed that under said will H. F. and J. W. Jones were vested with full power to borrow money and mortgage said land and thereby bind and charge the estates of their children in said lands; that said deed of trust was valid and enforcible to collect the amounts actually received by the borrowers, to wit, $5,003.50

and interest at six per cent., and a decree was pronounced in favor of complainants for $6,-073.52 and costs, and the land was ordered to be sold for its satisfaction. Defendants appealed, and have assigned errors.

Two questions are presented by the assignments of error.

*First.*—That the Jarvis-Conklin Mortgage Trust Company was not a qualified corporation, and hence the mortgage is void.

*Second.*—That there was no power in .the grantors, under this will, to mortgage the interest of the minors.

In respect of the nonregistration of the charter it does appear that when this loan was made and the mortgage executed, complainants had not complied with the law on this subject. But it appears that afterwards, on the 30th of March, 1892, the company filed its charter with the Secretary of State at ·Nashville, and on the 16th of May, 1892, it filed an abstract of its charter with the Register at Brownsville, where this transaction occurred, and on April 4, 1892, at Memphis, where the matter was in part negotiated. The curative Act of 1875 validated this transaction to the extent of the money actually loaned and six per cent. interest. The Chancellor's decree was only for the amount actually received by the mortgagees and six per cent. interest. *Butler* v. *Association,* 13 Pickle.

The main question in the case is presented by the demurrer to that part of the bill which sets out the will of Mrs. Jones, whereby a six-tenths interest in the land was devised to the children of her sons, with an unlimited power in their fathers to dispose of same, and the remaining four-tenths to Mrs. Ellen W. Jones.

The language of the will is that the fathers of these children shall have the power to sell or convey by deed or otherwise, or to dispose of the land in any way they see proper for the benefit of their children, the two sons being the judges of what is best for their children.

It is plain, we think, from the terms of the will, that these sons, H. F. Jones and J. W. Jones, were not constituted trustees for their children, but held a mere power of appointment, which they were authorized to exercise at their discretion. "In some cases the donor makes a direct gift to one party, but subjects the gift to the discretion or power of some previous taker or other party." Perry on Trusts, Vol. 1, Sec. 250. "A power of sale may override estates in fee." 18 Am. and Eng. Ency., p. 907. "A donee with general power of appointment is practically the owner." *Id.,* 916. See Lawrence's Estate, 136 Penn. St., p. 367; Beck's Appeal, 116; *Id.,* 547; *Hoxey* v. *Finney,* 147 Mass., 616; *Kull* v. *Kull,* 37 Hun, 476. "It is obvious that every power of appointment is, strictly speaking, a

power of revocation; but still there is a striking distinction between estates actually limited in a settlement with a power of revocation, and estates limited in default of the exercise of a preceding power of appointment. In the first case, the estates are vested subject to be revoked or defeated by the exercise of the power." 2 Sugden on Powers, pp. 2, 3. "The distinction between a power and a trust has been clearly defined by the Court. A mere power is not imperative, but leaves the action of the party receiving it to be exercised at his discretion—that is, the donor or grantor, having full confidence in the judgment, disposition, and integrity of the party, empowers him to act according to the dictates of that judgment and the promptings of his own heart. A trust is imperative, and is made with strict reference to its faithful execution. The trustee is not empowered, but is required to act in accordance with the will of the one creating the trust." Tiffany & Bullard on Trusts and Trustees, pp. 209, 210. If there were a trust in this will, a Court of Equity would enforce it; but it would never enforce this power. It is a mere discretionary power, with the discretion absolute in the sons, they being the sole judges. See 2 Sugden on Powers, star page 158, quoting the language of Lord C. J. Wilmot, as follows: "Powers are never imperative; they leave the act to be done at the will of the party to whom they are

given. Trusts are always imperative and obligatory upon the conscience of the party intrusted." And see 1 Perry, Secs. 248, 252, 511; Hill on Trustees, 4 Ed., 760; 2 Sto. Eq. Sec. 1070. "It sometimes happens that a person having property or money to dispose of, intrusts the disposition thereof to the judgment and discretion of another; and where the intention of the donor or grantor is to trust entirely to such discretion because of the confidence he has that such person will do better than he, at the time of making the gift or grant can dictate, such intention confers a mere power, and equity will not interfere with the execution of it." Bullard and Tiffany on Trusts and Trustees, p. 209.

It is insisted that the predominant idea of this will is that the sons should have absolute power over the property, and that an unlimited power of disposition includes unlimited power to charge as the greater includes the less. *Webster* v. *Helm,* 9 Pickle, 325; *Stiefel* v. *Clark,* 9 Bax., 470.

It is argued, however, that while this will constitutes the fathers the exclusive judges of what is best for their children, yet the power to convey must be exercised for the benefit of the children. The record shows that the money borrowed was appropriated by the grantors to their own use, and that the children never received any benefit from it. There is no proof, however, that the trust company, or its agents who negotiated

the loan, had any notice that the fund was to be misappropriated; nor did they know it was the intention of the mortgagors to use this fund for their private purposes or to misappropriate it.

In *Bostick* v. *Winton,* 1 Sneed, 524, it was said, viz.: "A power of appointment must be exercised in good faith for the benefit of those who are intended beneficiaries under it. If it appear that it has been exercised collusively and for the benefit of the party exercising it, such exercise is a fraud upon the power, and cannot be maintained." In that case, however, the Court found as a fact that the purchaser had full notice or knowledge of all the circumstances attending the conveyance.

It is insisted, however, that because the deed of trust does not recite on its face that it was executed in pursuance of the power given by the will, it must be construed to convey simply the grantor's interest. It is now settled by this Court that it is not necessary that the intention to execute a power should appear by express recitals in the deed. *Young* v. *Mutual Ins. Co.,* 101 Tenn., 311. In that case this Court approved the rules laid down by Mr. Justice Story, in *Blagge* v. *Miles,* 1 Story Rep., 426, which are held to indicate a sufficient intention to execute the power: "First, when there is some reference in the will or other instrument to the power; or, second, a reference

to the property which is the subject of the power; or, third, when the instrument executed would be ineffectual and a nullity, and could have no operation as an execution of the power." See, also, *Lee* v. *Simpson,* 134 U. S., 572; *Pate* v. *Pierce,* 4 Cold., 113. If there is a reference to the property which is subject to the exercise of the power, and the grantors have no right to convey except under the power, it is sufficient. 2 Wash., Real Property, 618, (3d Ed.); 2 Perry on Trusts, Sec. 511c (4th Ed.). It is sufficient if the intention to execute the power appears by act, words, or deeds, demonstrating the intention. *Pate* v. *Pierce,* 4 Cold., 113. In this case it is insisted that the act of both donees and the wife of one joining shows the purpose to convey the whole estate.

"As to four-tenths of this property, it is true H. F. Jones might have conveyed simply as husband; but as to the other six-tenths he had no right to convey, except under this will; and J. W. Jones had no right at all, except under this will; and the joinder of J. W. Jones with H. F. Jones shows clearly that they intended to convey under the power given them by the will. If it had been the intention of H. F. Jones to convey only his wife's interest, he would have so expressed it; but he conveys the whole estate, and as she did not own the whole, his deed would be insensible and a mere absurdity. If

the words of the conveyance cannot be satisfied without supposing an intention to execute the power, it will be referred to the power, on the supposition that the party executing it purposed doing an effective act. *Yates* v. *Clark,* 56 Miss., 216, citing *White* v. *Hicks,* 33 N. Y., 383. In this case, Clark's widow was donee of a power to employ the testator's (her husband) property in such manner as she might think for the interest and advantage of herself and her children, and she sold and conveyed the fee. Campbell, J., said, as she was made the sole judge of their mutual advantage, her power to dispose of the propery was unlimited. It was not necessary to refer to the power if the act shows that the donee had in view the subject of the power, and intended to execute it. *Id."*

In this case the deed of trust purported to convey the fee, which would be impossible without the exercise of the power. Again, it is well settled in this State that a *bona fide* purchaser of trust property is not bound to see to the application of the purchase money. *Young* v. *Mutual Ins. Co.,* 47 S. W. R., 428; *Williams* v. *Otey,* 8 Hum., 563; *Loughmiller* v. *Harris,* 2 Heis., 553; *Brown* v. *Foote,* 2 Tenn. Ch., 255, 263; *Harris* v. *Smith,* 14 Pickle, 286; *Whatley v. Oglesby,* 44 S. W. R. (Texas), 44.

There was nothing on the face of the deed of trust in this case indicating an intention on the

part of the sons to misappropriate the money borrowed, and the mortgagee had no actual notice or knowledge of any such intention. The purchaser from a trustee is not bound to see to the proper investment of the proceeds of the sale, unless he knows that the trustee intends to defraud the beneficiary, or the instrument itself discloses such intention. The mortgagee must have been a party to the fraud or had notice, actual or constructive, of the intended breach of trust.

Affirmed.