MATTHEWS *et als. v.* CAPSHAW *et al.*

(*Nashville.* December Term, 1902.)

1. **POWER OF SALE. Upon certain event, or independent fact, a condition precedent must be strictly pursued; and purchaser buys at his peril.**

    Where a special or limited power of sale is given, to be exercised only upon the happening of a certain event, or distinct, independent and substantive fact, such as the majority, marriage or death of some particular person named, made a condition precedent, the general rule of law, unquestionably, is that the special power can be executed only in the mode, at the time, and upon the conditions prescribed in the instrument creating it, and the purchaser must, at his peril, ascertain whether the contingency upon which the sale is authorized exists. (*Post, pp.* 485, 489.).

2. **SAME. Same. But where the condition to be determined involves judgment and discretion the exercise of it is conclusive and not reviewable by courts.**

    But this rule does not apply and is not the law where the condition upon which the power of sale may be exercised is such that the determination whether it has been fulfilled, or not, requires the exercise of judgment and discretion, as to which there may be an honest difference of opinion; and in cases of this character the decision of the donee of the power is conclusive of the question, and a sale made in pursuance of the power, in good faith or without notice to innocent purchasers, will not be set aside, although it may afterwards appear that the judgment of the donee was erroneous, for the exercise of such judgment and discretion in good faith and without fraud or collusion is not subject to review by courts. (*Post, pp.* 485-492.)

    Cases cited and approved: McGavock *v.* Pugsley, 1 Tenn. Ch.,

418; Jennings *v.* Teague, 14 S. C., 238-240; Bunner *v.* Storm, 1 Sand. Ch., 357.

3. **SAME.   WILLS.   Liberally   construed,   and   doubt   resolved in favor of the power for protection of innocent purchasers.**

Power of sale given in wills should receive a liberal construction, in order to carry into effect the purpose and intent of the testator, which is controlling, but, if it be doubtful whether the exercise of the power conferred is left to the judgment and discretion of the donee thereof, the doubt will be resolved in favor of such discretion for the protection of innocent purchasers, specially where all the facts affecting the proper exercise of the power are in the possession of the complainants and have not been fully disclosed by them.   (*Post, pp.* 492-493.)

Case cited and approved:    Fitzgerald *v.* Standish, 102 Tenn., 383.

4. **SAME.   Same.   Same.   Case in judgment.**

Where the testator devised all his property to his widow during her life time, or widowhood, and authorized her, in case of necessity, to sell any of it for the benefit of the family, the same as he could for himself, with small bequests to certain of his children, and a special provision that all of his children should be made equal in the distribution of his estate, she is the sole judge as to the necessity of selling property, and a sale of land by her is valid though no actual necessity is shown to exist.   (*Post, pp.* 483-492.)

5. **SAME.   Need not be expressly recited in its execution, when.**

Where there is a conveyance of property which the grantor is vested with power to sell and convey, if there be a reference to the property or power in the conveyance, or if the instrument would be inoperative except as an execution of the power, it is well settled that its exercise will be presumed, and no express recital of the power is required.   (*Post, pp.* 493-494.)

Cases cited:    Pate *v.* Pierce, 4 Cold., 114; Young *v.* Ins. Co.,

101 Tenn., 316; Guarantee & Trust Co. *v.* Jones, 103 Tenn., 254; Hall *v.* Preble, 68 Me., 100.

**6. SAME. WILLS. Same. Case in judgment.**

Where the testator devised all his property to his widow during her life or widowhood and authorized her in case of necessity to sell any of it for the benefit of the family, the same as he could for himself, a conveyance of the land so devised, or any part thereof, made by her, purporting to convey a fee with formal covenants of seizin, good right to convey and general warranty, is not invalid because failing to state that it was made under the power in the will. (*Post,* *pp.* 483, 493.)

---

FROM PUTNAM.

---

Appeal from the Chancery Court of Putnam County. T. J. FISHER, Chancellor.

BRYANT & MCBROOM and F. T. FANCHER, for Matthews *et als.*

ALGOOD & FINLEY and R. B. CAPSHAW, for Capshaw *et al.*

MR. JUSTICE SHIELDS delivered the opinion of the Court.

Complainants, children and devisees of Lawrence Matthews, deceased, bring this bill to assert their title in remainder upon the falling in of the estate of their mother, Mrs. Agnes Matthews, for her own life, now outstanding, in certain valuable lots in

Cookeville, Tenn., and to have declared void and inoperative, a deed made by Mrs. Matthews, purporting to convey the property in fee to Simeon Hynds.

Lawrence Matthews made his will in 1860, and died in 1874, the owner of real and personal property including that in question, and leaving Agnes Matthews, his widow, and complainants (twelve in number), his children, surviving. His will was duly admitted to probate, and John F. Matthews and Mrs. Agnes Matthews, the executor and executrix, therein named, were qualified.

The first clause of the will is in these words: "First. If my wife, Agnes, should live longer than I do, I want, at my death, all of my just debts to be paid, and then I want my wife, Agnes, to have all my lands and negroes and effects during her life or widowhood, and that in case of necessity, I authorize my wife, Agnes, to sell any properties or lands or negroes, as same as I could for myself, for the benefit of the family." The other clauses contain some small bequests to certain of his children, and a special provision that all of his children shall be made equal in the distribution of his estate.

On November 5, 1877, Mrs. Agnes Matthews conveyed the property in controversy, for a valuable consideration in hand paid, to Simeon Hynds, in fee, with formal covenants of seisin, good right to convey, and general warranty; and through several intermediate conveyances, purporting to convey in fee, made for

valuable considerations paid, and without notice of
the claim now attempted to be asserted, the several
defendants now have possession and claim title to the
property. The deed to Simeon Hynds contains no
reference to the will of Lawrence Matthews, or the
power of disposition of his property therein given
his wife.

At the time this conveyance was made, Mrs. Mat-
thews was in possession of some five or six hundred
acres of land, and had some money and other personal
property; but the condition of the estate of the testa-
tor and of the several complainants does not fully
appear, save that the personal estate was evidently
small, and the children had not been advanced equally.
Mrs. Matthews, who is now about ninety years of age,
was examined as a witness, and testified that she
sold the property because she thought she had the
right to do so, and that she accounted for the proceeds
in a settlement she made as executrix some nine years
afterwards. There is no charge of fraud or unfair-
ness in connection with the sale and conveyance of the
lots.

The complainants insist that the power of sale vest-
ed in Mrs. Matthews was a limited power, to be exer-
cised only upon the happening of a certain contin-
gency, and that she was not authorized to convey the
property of the estate unless a necessity for such sale
arose, and that, under the facts above stated, no such
necessity existed when the sale was made to Simeon

Hynds, and, further, if a necessity did exist, the power given her was not exercised, since the deed contains no express recital that it was her intention to execute it, and the presumption is that she only intended to convey her estate for life, and for these reasons her conveyance was only effective to pass her life estate; that they are the rightful owners in the remainder of the fee to the property; and they bring their bill to have this adjudged, and the conveyance of Mrs. Matthews, so far as it purports to convey the fee, declared a cloud on their title, and removed.

The general rule of law, unquestionably, is that, where a special power of sale is given, to be exercised only upon the happening of a certain event, made a condition precedent, it can be executed only in the mode, at the time, and upon the conditions prescribed in the instrument creating it, and the purchaser must, at his peril, ascertain whether the contingency upon which the sale is authorized exists. This rule is recognized and adhered to by this court in all cases proper for its application, and it is not necessary to cite authorities to sustain it. But the rule only applies where the condition upon which the power is to be exercised is upon the happening of a certain event or independent fact, such as majority or marriage of some one named, which may be ascertained by any one with equal certainty. It does not apply. and is not the law where the condition is such that the determination whether it has been fulfilled, or not, re-

quires the exercise of judgment and discretion as to
which there may be an honest difference of opinion;
and in cases of this character the decision of the
donee of the power is conclusive of the question, and
a sale made in pursuance of the power, in good faith
or without notice to innocent purchasers, will not be
set aside, although it may afterwards appear that the
judgment of the donee was erroneous.  This distinc-
tion is well established by the authorities.

Chief Justice McIver, of the supreme court of South
Carolina, in a well-reasoned opinion in a case involv-
ing this question, said: "It is quite clear that the
power of sale was a conditional one, and it is equally
clear that the condition was, in its nature, precedent,
and not subsequent, and that, such being the case,
until the condition was performed, or the contingency
upon which the power was conferred happened, the
power could not be lawfully exercised.  So that the
real question in this case is whether the contingency
upon which the power to sell was given had happened
at the time the sale was made, and, as subsidiary to
this, who was to determine whether the contingency
had happened.  To solve these questions, it will be
necessary to inquire what was the nature of the condi-
tion.  Was it the happening of a distinct and inde-
pendent fact, or was it a condition which, in its very
nature, involved the exercise of judgment or discre-
tion for the determination of whether it had happened,
and about which, therefore, there might well be, as

there was in this very case, honest difference of opinion.   It certainly was not a distinct and independent fact, as if the testator had provided that the executor should sell when a certain person should attain to a certain age, but it was a condition, the happening of which could only be determined by an exercise of judgment.   When the value of property should recover from a depression caused by war or any other special circumstance must necessarily be a question to be determined by the exercise of judgment—one about which persons might, and probably would, honestly differ.   What was to be the extent of the recovery which would authorize a sale?  Somebody must judge of this, and, if the executor is not permitted to do so, then it ·is difficult to suggest who could.   If the executor commits an error of judgment in determining such a question, that certainly ought not to invalidate a sale made by him in the honest exercise of his judgment.   If it did, then it will be impossible to tell, until after it was tested by a judicial proceeding, whether any sale made under such a power was valid; and, if such a rule be established, it would destroy all chances of making such a sale, for certainly no one would buy with the prospect of having his title inquired into and assailed years after upon the ground that the executor had committed an error of judgment in determining a question whih was left to his diccretion. . .  When, therefore, as in this case, a power of sale is given to an executor upon the hap-

pening of a contingency which can only be ascertained by the exercise of judgment and discretion, and the executor, in the honest exercise of his judgment, determines that such contingency has happened, and accordingly makes the sale, such sale can not be invalidated, even though it should be made to appear, in the light of subsequent events, that the executor had committed an error of judgment in determining whether the contingency had happened upon which he was authorized to sell. If, however, it should appear that the executor erred willfully, or from such gross negligence as would imply willfulness, then it would be different, and the question whether the sale should be allowed to stand would depend largely upon whether the purchaser had notice of such misconduct on the part of the executor." *Jennings* v. *Teague,* 14 S. C., 238-240. Other authorities are in accord.

When the power of sale is conferred, to be exercised if a necessity for so doing arises, the judgment of the donee as to the necessity is conclusive, in the absence of fraud. *Bunner* v. *Storm,* 1 Sandf. Ch., 357.

If the trustees exercise their discretionary power in good faith, and without fraud or collusion, the court can not control or review this discretion. Perry on Trusts, sec. 511.

When a limited power of disposition is given, and the discretion of judging of the contingency is also conferred, and there is no fraud or collusion, the sales

made by the donee can not be impeached. *McGavock* v. *Pugsley,* 1 Tenn. Ch., 418.

Whatever liability might attach to the executor on its being made to appear that the exercise of his judgment was not made in good faith, the title of the purchaser would not be affected thereby, unless collusion or guilty knowledge can be traced to him. 2 Wms. on Ex'rs., 841.

The power of sale vested in Mrs. Matthews by the will of her husband is clearly a limited power, which she could exercise only upon the happening of the condition stated in the will—a necessity for so doing arising, a conditon precedent—and she had no right to dispose of any of the property of the estate until this contingency was determined to exist. But by whom was the fulfillment of the condition to be determined? It did not depend upon the occurring of an independent or substantive fact, such as the majority or death of some particular person, of which there would be, in all probability, record evidence, and which could be inquired into by a stranger or probable purchaser, and ascertained with as much certainty as it could by the donee of the power. It was a matter of which Mrs. Matthews—and here attention is called to the fact that this power is not given to her and John Matthews as executrix and executor, but to her alone, as an individual, as the widow of the donor and the head of his family, as well as one of the personal repre-

sentatives of his estate—was expected to and would know and understand better than any one else.

The property was to be sold in case of necessity, and for the benefit of the family, which covered and included the individual wants and necessities of the widow and every one of the twelve children, as well as their collective interests in the proper management and protection of the estate of the testator.    Who would have more accurate knowledge of all these matters than Mrs. Matthews?    Who would be in a better position to determine the necessity of a sale of the property for the benefit of the entire family, and more interested in a correct determination of the question? And how was it possible for a stranger to ascertain the ever-changing and constantly increasing demands of this large family of children, almost yearly maturing, and requiring advancements to aid them in starting in life—a matter evidently contemplated by the testator?    The    occasion    for    the    sale    of    the property might have been caused by a family necessity —one which it was not desired to make public, imperatively demanding ready money, and just such a contingency as the testator desired to provide for above all things.    There could have been a necessity— an imperative and absolute one—requiring the sale of the property, which the public did not know and could not ascertain.    It is therefore clear that the condition upon which the power was to be exercised was not upon the occurrence of any certain event

which could be ascertained by all persons alike, but the existence of a state of affairs the ascertainment of which called for accurate knowledge of the inside condition of the estate of the testator and that of the numerous members of his family, and the exercise of judgment and discretion in determining, upon this knowledge, whether the necessity did in fact exist, as to which different persons might, in good faith, arrive at different conclusions.

We think it is evident that it was the intention of the testator which must control; that the existence of the necessity of a sale of his property should be determined by Mrs. Matthews, in whom he most confided, in accordance with her best judgment and discretion; and that any disposition of the property made by her in good faith, although others might differ with her as to the necessity, was valid, and vested in the purchaser a good title.

Powers of sale given in wills should receive a liberal construction, in order to carry into effect the purpose and intent of the testator. To place any other construction upon this will than that which we have given it would clearly defeat the plain intent of the testator. It is clear that, by vesting this power of sale in his widow, he intended to provide not only a cheap and expeditious mode of sale of property for the purposes for which the law allows it to be sold, such as the payment of debts and for distribution among his children, but also for a prompt means of

Matthews v. Capshaw.

raising money whenever, in an emergency, the necessities of his family should require it. If the necessity of a sale was not to be determined by Mrs. Matthews, then it could only be ascertained by a resort to the courts, with attendant expense and delay, which it was intended to provide against. If the testator had intended that the power should only be exercised when a necessity should be judicially determined to exist, he would have so said, and such provision would also have been useless, as a sale would have been decreed without any such power whenever a necessity recognized by law was found to exist; and, if Mrs. Matthews' determination of the existence of the necessity for the sale was not conclusive, the power would be abortive and futile, for no one would purchase the property if any one of those interested, long afterwards, as is here attempted, could have the matter opened, and her judgment as to the necessity of a sale reviewed and possibly held erroneous, and thus the construction contended for would defeat and destroy the power itself.

But if it were doubtful whether the exercise of the power conferred was left to the judgment and discretion of Mrs. Matthews, we would resolve the doubt in favor of such discretion, for the protection of the present owners of the property—they being innocent purchasers—since the complainants, who are in possession of all the facts, have not fully disclosed the extent of the estate of the testator, its indebtedness,

Matthews v. Capshaw.

and the financial condition of the several members of the family when the sale was made.

In a late case similar to this, this court said: "The purchasers of the lot, as well as the present owners, appear to be innocent purchasers, and to have bought in good faith; and in their interest the rule will be enforced that where it is doubtful whether a power has been exercised legally or illegally, in favor of innocent purchasers and meritorious claimants, a legal execution will be presumed." *Fitzgerald* v. *Standish,* 102 Tenn., 383 (52 S. W., 294).

The other position of the complainants is equally unsound. While the conveyance made by Mrs. Matthews to Simeon Hynds purports upon its face to be made by her as an individual, and contains no reference to the will of Lawrence Matthews, nor to the power of sale contained therein, it does describe and convey in fee certain property of the testator, and contains full covenants of warranty. It is now well settled in this State that, when a conveyence is made of property which the conveyor is vested with a power to sell and convey, if the property [or power] be referred to in the conveyance, or the instrument would be inoperative except as an execution of the power, its exercise will be presumed, and no express recital of the power is required. In the case of *Hall* v. *Preble,* 68 Me., 100, quoted approvingly by this court, it is said: "It is not necessary that there should be an express declaration in the deed that it is made in execution of the

power. It is sufficient if the deed purports to convey the fee. When a person conveys land for a valuable consideration, he must be, and is, engaging with the grantee to make the deed as effectual as he has the power to make it." *Young* v. *Insurance Co.,* 101 Tenn., 316 (47 S. W., 428).

It is sufficient if the intention to execute the power appears by words or deed indicating the intention. *Pate* v. *Pierce,* 4 Cold., 113.

If the deed purports to convey the fee, which would be impossible without the execution of the power, no recital of it is necessary, and the intention to exercise it is presumed. *Guarantee & Trust Co.* v. *Jones,* 103 Tenn., 254, 255 (58 S. W., 219).

This deed does purport to convey the fee and warrant a perfect title, which the conveyer could not do or make good without the execution of the power, and without which the deed would be ineffectual to pass the estate contracted; and we hold that the conveyer is presumed to have intended to and did, execute the power conferred upon her, and that the deed was and is operative to vest the fee to the property conveyed in her vendee, and the defendants claiming under him.

Affirmed, with costs.