## C. CROSS *v.* BUSKIRK-RUTLEDGE LUMBER CO.

### (*Knoxville.* September Term, 1917.)

1. **VENDOR AND PURCHASER.** Contract for warranty deed. When contract becomes executed. Remedies of vendee.

Where title is defective, delivery of a warranty deed to one who has gone into possession on representation of good title under contract of bargain and sale, but providing for "apt and proper deed with covenants of general warranty," does not render the contract an executed one, so as to prevent a rescission of the contract, in the absence of waiver. (*Post, pp.* 85-92.)

Cases cited and approved: Topp v. White, 59 Tenn., 165; McElya v. Hill, 105 Tenn., 319; Land Co. v. Hill, 87 Tenn., 588; Buchanan v. Alwell, 27 Tenn., 516; Cunningham v. Sharp, 30 Tenn., 116; Hale v. Sharp, 44 Tenn., 275; Hardwick v. American Can Co., 113 Tenn., 657.

2. **WILLS.** Construction.

A gift by testator of the use of all his property, real and personal, to his wife for her life, created a life estate in all property, real and personal. (*Post, pp.* 92, 93.)

Cases cited and approved: Gourley v. Thompson, 34 Tenn., 387; McKee v. McKee, 52 S. W., 320; Matthews v. Capshaw, 109 Tenn., 480.

3. **WILLS.** Construction. Contradiction.

Where a testator gave wife a life estate in all his property, a power of sale given to executors cannot be construed to deprive her of her life estate, or dispose of property without her joining in the deed. (*Post, pp.* 93-95.)

Cases cited and approved: Allen v. Susong, 41 Tenn., 204; Davidson v. Phillips, 17 Tenn., 93; Greer v. Wroe, 33 Tenn., 246; Hubbard v. Godfrey, 100 Tenn., 150; Pullen v. Hopkins, 69 Tenn., 741; Hicks v. Tredericks, 77 Tenn., 491.

4. **VENDOR AND PURCHASER.** Contract for warranty deed. When executed.

Under contract for warranty deed, delivery of warranty deed, where title of grantor depends on parol evidence of adverse possession, is not sufficient to render contract executed, in absence of waiver, because title must be good as founded on the records, and not on fact not of record. (*Post, p. 95.*)

5. **SPECIFIC PERFORMANCE.** Contracts for sale of land.

Although grantor has good title by reason of adverse possession, a contract of sale of such land cannot be specifically enforced unless good title is shown of record, because a purchaser does not have to take a title which will have to be proved by parol evidence. (*Post, pp. 95-97.*)

Cases cited and approved: Mullins v. Aiken, 49 Tenn., 535; Cunningham v. Sharp, 30 Tenn., 116; Topp v. White, 59 Tenn., 165; Buchanan v. Alwell, 27 Tenn., 516; Collins v. Smith, 38 Tenn., 255.

---

FROM SCOTT.

---

Appeal from the Chancery Court of Scott County.—Hugh G. Kyle Chancellor.

E. G. Foster and H. M. Carr, for appellant.

J. F. Baker and J. A. Fowler, for appellee.

Mr. Justice Green delivered the opinion of the Court.

This bill was filed by the complainant to collect a balance alleged to be due from the defendant on account of the purchase of a tract of land in Scott county. The bill averred that the contract had been exe-

cuted and a deed for the land delivered. The complainant prayed for alternative relief in the event he had mistaken his remedy. He asks in this court that he be granted a decree for specific performance if the court should not agree with him that this contract had been executed.

The defendant filed an answer, denying that a completed or executed contract of sale of the land in question had been made. Defendant insisted that there was only an executory agreement to purchase, with which it had refused to comply on account of complainant's defective title. Defendant also filed a cross-bill in which it asked for a rescission of the contract made with the complainant, and for a recovery of that part of the purchase money which had been paid to the complainant, and also for damages.

A great mass of proof was taken, and the chancellor decreed that the contract between the parties had not been executed, and furthermore decreed that complainant's title to the land was defective, and refused a specific performance, and dismissed complainant's bill. It appeared that defendant had already cut certain timber on the lands in question, and the chancellor ordered a reference to ascertain the value of this timber, and also directed the master to report what damages the defendant had sustained. Before this account was taken, an appeal was prayed and granted, and the case has been heard in this court.

The complainant, C. Cross, Edward L. Hall, and Edward Shaver were owners of a tract of land in

139 Tenn.—6

Scott county, Tenn., which they acquired by deed from W. H. Buttram, clerk and master, November 27, 1899. These parties also had other assurances of title. The tract of land consisted of about 1,800 acres.

U. B. Buskirk was a lumber man residing in Lexington, Ky. He came to Scott county, Tenn., in February, 1913, looking for timber lands. While there he met the complainant, Cross, and the latter showed Buskirk this tract of land owned by Cross, Hall, and Shaver. Negotiations followed between Cross and Buskirk, and on March 10, 1913, Cross, for himself and associates, and Buskirk, for the J. W. Johnson Company, the predecessor of the Buskirk-Rutledge Lumber Company, entered into the following written agreement:

"This agreement, made and entered into this the 10th day of March, 1913, by and between C. Cross of Oneida, Tenn., and Edward L. Hall of Jamestown, N. Y., as parties of the first part, and J. W. Johnson Co., a corporation of Lexington, Ky., as party of the second part.

"Whereas, the parties of the first part are joint owners in a certain boundary of land aggregating about eighteen hundred acres, situated in Scott county, Tenn., near the town of Oneida, in district No. 8. Said land is further described as being known as the Blankenship land, whereas C. Cross, one of the parties to this agreement, is owner in his own right of three tracts of land, two of which adjoin the eighteen

hundred acres first above referred to, the other tract lying partly in the town of Oneida, Tenn., known as the Joshua Smith tract:

"Now this agreement witnesseth: That the said C. Cross and Edward L. Hall have this day bargained and sold to the party of the second part the eighteen hundred . . . of land referred to in this contract at the price of eight dollars ($8) per acre, on the following terms and condition: That is to say, one-third cash, one-third in six months, one-third in twelve months, deferred payments to draw interest from date of deed.

"The said C. Cross and Edward L. Hall agree to survey the said land as quickly as can reasonably be done, and when acreage is ascertained by survey, then the said C. Cross and Edward L. Hall are to make to the second party an apt and proper deed with covenants of general warranty, retaining a vendor's equitable lien upon the land to secure the unpaid purchase money.

"The said C. Cross and Edward L. Hall acknowledge the receipt of five thousand dollars, evidenced by the said second party's check on the Phœnix 3rd National of Lexington, Ky., payable to C. Cross.

"Upon ascertaining the true acreage of the said land by survey, should it turn out that the five thousand dollars so paid is not sufficient to cover one-third of the purchase money, then the said second party is to immediately pay the said C. Cross and Edward

L. Hall a sum equal to the difference of the one-third and the five thousand dollars so paid.

"However, should it turn out that five thousand dollars so paid is in excess of the one-third of the purchase price, then the said C. Cross and Edward Hall are to refund the difference to the said second party.

"C. Cross, in his own right, gives the said second party the privilege of taking the other three tracts at the same price and upon the same terms and conditions as the eighteen hundred acre tract.

"Witness our hand and seal day and date above written.

"C. Cross.  [Seal.]

"Edward L. Hall, [Seal,]

"By C. Cross.

"J. W. Johnson Company,  [Seal,]

"By. U. B. Buskirk, V. P.

"Witness:  H. R. Anderson."

At the time of this purchase, Buskirk's company was anxious to procure lumber to fill certain contracts that it had outstanding. A survey of the land described was begun promptly. One surveyor was employed by Cross and another by Buskirk.

Before any deed to the land was drawn up, Buskirk's people entered and began cutting the timber. Cross believed that he had a perfect title, and so assured Buskirk, and Buskirk thereupon entered and began cutting, on the faith of this assurance.

On March 12, 1913, a deed to the land, describing it in two tracts, was drawn up and executed by Cross and wife to Buskirk's company. This deed was left with Mr. Baker, defendant's attorney. Cross had previously taken deeds to himself from Edward L. Hall, one of his associates, and from the executors of Edward Shaver, his other associate in the ownership of this land, Shaver having died.

This deed did not accurately recite the consideration paid for the land. An additional memorandum or agreement was drawn up and executed by Cross, which fully recited the consideration paid. This it appears was done by the parties to beguile the tax assessor.

In pursuance of the terms of the contract of sale, Buskirk paid to Cross $5,000, and later paid him $468.69, which was one-third of the purchase price agreed on after the acreage was determined.

Some other agreements and writings were executed and correspondence had between the parties, which it is not material to set out in this connection.

One of the principal controversies between the parties, as indicated in the statement above, is whether or not this contract between them was executed or executory.

The complainant insists that the transaction was closed and title passed as a result of the contract of March 10, 1913, heretofore copied. We do not assent to this contention. It is true that the agreement recited that the vendors had "bargained and sold,"

using the past tense, but a further inspection of the document discloses that other things were to be done. The land was to be surveyed, and upon the acreage ascertained the amount of the cash payment was to be estimated, and turned over, and "an apt and proper deed with covenants of general warranty" was to be made by the vendors. The deal was not completed, and the contract was not executed at this stage. *Topp* v. *White,* 59 Tenn. (12 Heisk.), 165.

Complainant next insists that the contract certainly became executed when the deed was prepared, and delivered to Mr. Baker, defendant's attorney.

Over this latter contention perhaps the greatest fight in the case is made.

Mr. Cross insists that it was understood between him and Buskirk that the transaction was to be closed by the delivery of this deed to Mr. Baker. Mr. Foster partially corroborates this contention.

Mr. Buskirk, on the contrary, maintains that it was understood between the parties that this deed was to be turned over to Mr. Baker along with the complainant's other title papers, to enable Mr. Baker to pass on the title to the lands, and that the understanding was that the transaction should not be considered as closed until title to the lands had been examined and approved by Mr. Baker.

On the theory that this contract has been executed, the complainant insists that defendant may not avoid payment of the purchase price or have a rescission, even though the title to the land partially

fails.  Complainant insists that under such circumstances defendant's only remedy is upon the covenants in the deed executed by the vendors.

Before considering this, it should be pointed out that defendant did not enter upon this land under the deed.  For reasons stated above, defendant entered upon the land shortly after the contract of sale was made, upon complainant's assurance of good title and before the deed was executed.  There can be no controversy as to this on the proof in the record.

The general rule undoubtedly is that a vendor's remedy for a defective or incumbered title, in the absence of fraud or insolvency of the vendor, is not rescission, but an action upon the covenants of his deed, where the contract is an executed one. *McElya* v. *Hill,* 105 Tenn., 319, 59 S. W., 1025; *Land Co.* v. *Hill,* 87 Tenn., 588, 11 S. W., 797; *Topp* v. *White,* 59 Tenn. (12 Heisk.), 165; *Buchanan* v. *Alwell,* 27 Tenn. (8 Humph.), 516.

This rule, however, is said not to "apply in any jurisdiction where there is a provision to the contrary in the contract."  39 Cyc., 1445.

"Particular provisions are frequently found in contracts which specifically or by implication require the vendor's title to be good.  Thus it has been held that the conveyance of a good title by the vendor is required where a contract for the sale of land provides for a 'good and sufficient title,' a 'lawful title,' a 'perfect title,' a 'general warranty of title,' a

'good' or 'good and valid' deed, a 'good and sufficient deed to vest the title,' or 'to convey the title,' a 'good and lawful deed and title,' a 'deed or conveyance clear of all incumbrances,' a 'deed with a covenant against incumbrances, a deed or conveyance 'free and clear,' a 'deed conveying a clear title,' a 'deed in fee,' a 'good and perfect deed,' a 'good and sufficient deed,' or 'good and sufficient conveyance,' a 'lawful deed of conveyance,' a 'deed' or 'deed of conveyance,' a proper conveyance for the conveying and assuring the fee simple of the premises,' a 'good and valid deed,' with the usual covenants of 'seisin and warranty,' a 'good and sufficient warranty deed, in fee simple, free from all incumbrances,' a 'warranty deed,' a 'general warranty deed,' or a 'good and sufficient warranty deed.' " 39 Cyc., 1445.

We have two instances of this kind in our Tennessee cases. Thus the vendor agreed to make "good and sufficient deeds of conveyance of and to said two tracts of land." The court held that these words created an obligation on the part of the vendor to "execute deeds of conveyance, not only sufficient in point of form, but fully operative, in effect, to pass to and vest the complainant with an indefeasible fee-simple estate." *Cunningham* v. *Sharp,* 30 Tenn. (11 Humph.), 116.

An agreement of the vendor to make or cause to be made "a deed in fee for said land" was held to mean, "not simply a deed good in form, but one

Cross v. Lumber Co.

fully operative in effect to pass to the complainant an indefeasible fee-simple estate.'' *Topp* v. *White,* 59 Tenn. (12 Heisk.), 165, 177.

By the contract in this case, Mr. Cross and associates agreed to execute ''an apt and proper deed with covenants of general warranty.'' The contract also recited that the owners ''are joint owners'' of the tract of land.

As seen above, an agreement on the part of the vendor to execute a warranty deed, a general warranty deed, or a good and sufficient warranty deed implies that his title is good, and binds him to convey a good title. See cases cited under note 11, 39 Cyc., 1446.

Such a contract is not satisfied by deed of a grantor who has not a good title.

Inasmuch, therefore, as Mr. Cross and associates contracted to convey a good title to these lands, unless they have in fact made a deed passing a good title, their contract cannot be said to have been completed or executed, by any delivery to Mr. Baker. He had no authority to waive any provision of the original contract so far as the proof shows.

''An executed contract is one which both parties have fully performed the terms of the contract by them to be performed. An executory contract is one in which the parties have not yet performed the terms of the contract by them to be performed. It consists of mutual outstanding promises.'' Page on Contracts, section 18.

"An executory contract is one in which a party binds himself to do or not to do a particular thing, whereas an executed contract is one in which the object of the agreement is performed. . . . An executory contract, it is said, conveys a chose in action while an executed contract conveys a chose in possession. . . . An executed contract consists in the performance of everything necessary to be done according to the terms of the contract between the parties contracting so as to fully invest the party contracted with dominion of the thing parted with." 6 R. C. L., 590.

To like effect, see our own cases of *Hale* v. *Sharp*, 44 Tenn. (4 Cold.), 275; *Hardwick* v. *American Can Co.*, 113 Tenn., 657, 88 S. W., 797; *Topp* v. *White*, 59 Tenn. (12 Heisk.), 165.

It therefore follows that if Mr. Cross and his associates do not possess good title to this tract of land, their contract with the defendant cannot be said to have been executed by mere delivery of a deed formally correct. They contracted to convey good title, and they have not done so. They have not yet performed the terms of the contract by them to be performed. They have not fully invested the vendee with dominion of the thing parted with. They have conveyed a title in action and not a settled title.

The case then turns on the condition of the title to these lands which Cross and associates undertook to pass.

As heretofore stated, these lands were conveyed by Buttram, clerk and master, to Cross, Hall, and Shaver. Mr. Cross took a deed from Hall and from Shaver's executors to himself and then undertook to pass the title by his own deed to defendant, in which his wife joined.

Edward Shaver, who owned a one-third interest in this property, seems to have died testate, leaving a widow and children surviving him. So far as the record shows, the widow is still alive. Mr. Shaver was a resident of Jamestown, N. Y., and his will was there probated in April, 1904. It has been filed for record in this State, and its material provisions are in the following words:

"I, Edward Shaver, of the city of Jamestown, N. Y., being of sound mind and memory, do make and publish and declare this to be my last will and testament, that is to say:

".(1) After all my lawful debts are paid and satisfied, I give and bequeath to my wife, Louise Shaver, the use of all my property, both real and personal, during her natural life, together with so much of the principal of my estate as she may deem necessary for her proper maintenance and support."

The second, third, fourth, fifth, and part of the sixth clauses of the will make bequests and provisions for the children and certain relatives of the testator. The concluding sentences of the sixth clause of the will are in these words:

"I hereby grant to my executors the power of sale of my real estate and power to execute the necessary conveyances thereof. I likewise make, constitute and appoint Edward L. Hall and George R. Butts executors of this my last will and testament, hereby revoking all former wills by me made."

Mrs. Shaver is not before the court in this case, and, of course, what we say in regard to her powers under the will does not determine or fix those powers, but is only said in consideration of the state of the title here undertaken to be passed by the complainant in this case.

The gift by the testator of the use of all his property, real and personal, to his wife for her life, undoubtedly created in her a life estate in all said property, real and personal. *Gourley* v. *Thompson,* 34 Tenn. (2 Sneed), 387; *McKee* v. *McKee* (Ch. App.), 52 S. W., 320; 40 Cyc., 1615. Moreover, the gift to Mrs. Shaver in this connection of said property for life, "together with so much of the principal of my estate as she may deem necessary for her proper maintenance and support," may perhaps confer on her, by implication, a power of sale as to all the property, if in her judgment any part of it should be required for the purposes indicated. If such a power is conferred, the necessity of a sale would be a matter to be controlled by her discretion. *Matthews* v. *Capshaw,* 109 Tenn., 480, 72 S. W., 964, 97 Am. St. Rep., 854.

The dominant intention of the testator seems to have been to provide for his wife's support and comfort.

Having undoubtedly conferred on her a life estate in all his property, real and personal, and his intention having been to secure her support, this power of sale given to the executors apparently cannot be so construed as to deprive her of her life estate; that is to say, they cannot, during the widow's lifetime, dispose of her property without any consultation with her or without her joining in the deed. Moreover, if a power of sale be given to her, such a power conflicts with the power of sale given to the executors, if that latter power be construed as conferring upon them authority to sell during the life of the widow.

As suggested by counsel for defendant, the probable construction of the will may be that the testator intended the executors to exercise the power of sale conferred on them after the death of the wife in order to carry out other provisions of the will.

What is the proper construction of the will we are not called on to determine. The necessary parties are not before us. Enough has been said, however, to show that the right of these executors to make a conveyance of the Shaver interest in these lands during Mrs. Shaver's life is, to say the least of it, extremely doubtful.

If they have no such right, then the title tendered by complainants in this case is defective to one-third undivided interest in all the lands involved.

The lands lie both north and south of the latitude line. As to one tract of 160 acres lying north of the latitude line, there is outstanding a Kentucky patent which is concededly the oldest and best title, and which covers the 160-acre tract. The complainant claims to have tolled the title to this tract of land by possession under younger title papers. There is a question as to the location of this possession. But, waiving this, the character of the possession is doubtful. It was a barn which Cross built upon the land, and in which he fed his cattle during feeding time. These cattle were out on the range in suitable seasons. There was no lock on this barn. Our court has not so far held a structure of this character to be a sufficient evidence of adverse possession.

Even in cases where a dwelling house had been constructed, the court has held that if the doors be left open, such a possession will not be sufficient. *Allen* v. *Suseng,* 41 Tenn. (1 Cold.), 204; *Davidson* v. *Phillips,* 17 Tenn. (9 Yerg.), 93, 30 Am. Dec., 393; *Greer* v. *Wroe,* 33 Tenn. (1 Sneed), 246.

The court has also held that pens for feeding hogs or cattle occasionally did not constitute sufficient evidence of adverse possession. *Hubbard* v. *Godfrey,* 100 Tenn., 150, 47 S. W., 81; *Pullen* v. *Hopkins,* 69 Tenn. (1 Lea), 741; *Hicks* v. *Tredericks,* 77 Tenn. (9 Lea), 491.

There are others detached parcels of land in this tract, to which the chancellor was of opinion that complainant did not have good title. These titles de-

pend largely upon possessions. The possessions as to their character, location, and continuity are subjects of parol controversy.

So that we have a case in which the title tendered by the complainant as to a one-third undivided interest in all the land is doubtful upon the record. The necessary parties are not before the court to enable this title to be fixed and declared herein.

Again we have a possession of dubious character relied on to establish ownership to the whole of 160 acres and the title to other parts of the land is dependent upon the testimony of witnesses as to possessions.

Under the circumstances, it cannot be said, in our opinion, that the complainant has complied with the agreement to furnish a good title. He has not completed and executed his contract.

On the other hand, if we regard his bill as one for specific performance, he is not entitled to the relief sought.

"In a suit by the vendor to enforce performance of a contract for the sale of land, the vendee will not be compelled to accept the title unless it is a marketable one; that is, one which will not expose him to litigation. To force upon the vendee a title which he may be compelled to defend in the courts is to impose upon him a hard bargain; and this a court of equity, in the exercise of its discretion, will refuse to do, irrespective of the question whether the title is actually good or bad." 36 Cyc., 632.

"Where the title depends upon the existence of a fact, which is not a matter of record, and the fact depends for its proof entirely upon oral evidence, the case must be very clear by the vendor to warrant the court in ordering specific performance. The opinion of the chancellor or of the appellate court can have little, if any, curative effect upon a doubtful title, where the doubt relates to a matter of fact, since a disputed fact may be proved in one litigation to-day, and disproved in another between different parties to-morrow." 36 Cyc., 635.

Our own authorities are fully in accord: *Mullins v. Aiken,* 49 Tenn. (2 Heisk.), 535; *Cunningham v. Sharp,* 30 Tenn. (11 Humph.), 116; *Topp v. White,* 59 Tenn. (12 Heisk.), 165; *Buchanan v. Alwell,* 27 Tenn. (8 Humph.), 516; *Collins v. Smith,* 38 Tenn. (1 Head.), 255.

Many other questions are raised on this record, and the case has been fully argued and has required much investigation upon the part of the court. We think what has been said, however, is sufficient to dispose of the controversy, and further elaboration is not required.

It results that the decree of the chancellor will be affirmed, and the case remanded for further proceedings in accordance with that decree. The complainant will pay the costs of this court, and the costs below will be adjudged by the chancellor.