JOSEPH MEISTER, et al. v. MRS. S. STEPPACH.

Western Section.　March 1, 1929.

Petition for Certiorari denied by Supreme Court, June 15, 1929.

T. R. Featherstone, and C. B. Rye, of Memphis, for appellant.
C. H. Marshall, of Memphis, for appellee.

OWEN, J. The defendant has appealed from a decree of the chancery court in favor of the complainants wherein it was decreed the specific performance of a contract for the sale of certain real property owned by complainants and located in the City of Memphis. The complainants, through certain real estate agents, sold to the defendant for five thousand ($5000) dollars, $2000 to be paid upon the delivery of the deed and $3000 in ninety days from the date of the contract which was October 19, 1927. The defendant deposited one hundred ($100) dollars as earnest money upon the execution of the contract, the complainants were to execute a good and valid warranty deed and allow the defendant ten days from the delivery of the abstract of title for the examination of said abstract. The complainants agreed to convey four double houses and one single house located at the N. E. corner of Peach and Queen streets on the lot approximately 40x240 feet. The stenographer, in copying this contract, said N. E. corner when it was intended to say S. E. corner and the bill sought to reform the deed to this extent. The defendant was dissatisfied with the title, she insisted that Queen street had not been dedicated to the public and was only a private alley. She filed a cross-bill to rescind the contract and to collect her $100 paid as earnest money.

The complainants' agents and the defendant went upon the grounds just prior to the execution of the contract. It appears that Peach street, also known as Carnes avenue, runs east and west in the City of Memphis, that Carnes subdivision to the City of Memphis contained a number of lots and the property in dispute is part of lot No. 9 of the subdivision which lies west of lot No. 8 and east of lot No. 10. These lots were originally 100 feet fronting on Peach street and extended south 235½ feet. The complainants owned forty feet being two-fifths of lot No. 9 and the east portion thereof. The other sixty feet or the western three-fifths of said lot is owned by one S. W. Moore. It appears that the complainants have erected five houses on their portion of lot No. 9, Moore owns four houses. The complainants have one double house that fronts north on Peach street. They own four houses south of this house that front on Peach street and these four houses front west. Moore has three houses that front east on his portion of lot No. 9 and one house that fronts north on Peach street opposite complainants' house that fronts on Peach

street. Between the houses owned by complainants and the houses owned by S. W. Moore there is an alley or walk-way with cinder pavement, the tenants of complainants and of Moore step off of their various porches onto this walk-way. All the walk-way is on Moore's portion of the lot.

When the defendant ascertained that Mr. Moore was claiming title to the twenty feet which embraced the alley or walk-way and it never had been dedicated, she declined to accept complainants' deed unless they would have the twenty feet dedicated to the public. It appears that Moore had been putting up notices that this twenty feet was private property, he had been putting up posts and he testified that he had suffered the complainants' tenants to use this private alley as a means of ingress and egress to their various homes. The defendant insisted that she would have no means of ingress and egress to four of her houses if she complied with her contract. It appears that mail is delivered to the tenants of complainants and of Moore and that some of these houses are numbered with chalk marks while some have metal figures upon them. Queen street is a public street to complainants' south line. It appears that complainants' houses have been erected about ten or twelve years. The Chancellor was of the opinion, in sustaining complainants' bill and dismissing the cross-bill, that the alley known as Queen street was used for a sufficient length of time by complainants' and Moore's tenants to make it a public thoroughfare, basing his opinion upon the fact that the city used this walk-way for mail delivery and that this walk-way had been used since these houses had been built, according to one witness, twenty-three years ago. Such use the Chancellor thought is sufficient to make it a public thoroughfare.

The defendant excepted to the Chancellor's decree, prayed and perfected an appeal and has assigned five errors. All these errors are embraced in the second error which is that the Chancellor erred in decreeing specific performance of the contract as reformed, the Chancellor reformed the contract and described the property as being at the southeast corner of Peach and Queen streets instead of the northeast corner. We are of the opinion that the letters N. E. was a typographical error and should have been S. E. We are of the opinion that Queen street, between the property of complainants and of S. W. Moore, is not a public alley, title to this twenty feet is in S. W. Moore. Moore was not made a party to this litigation and he is threatening to close up this alley and inviting a lawsuit with the complainants or with the defendant if she purchased this property. It is the only means of ingress and egress to the tenants of four of the houses the complainants are seeking to convey to the defendant. One witness did say that this alley had been opened twenty-three years but he is evidently mistaken and meant twelve or thirteen

years as the greatest length. There is nothing to show that Carnes property was subdivided twenty-three years ago and practically all the proof shows that all these houses owned by Moore and complainants have been built about ten or twelve years. Complainants refer to the J. A. Carnes Subdivision as shown by plat of record in Plat Book No. 1, page 89 in the Register's Office of Shelby County, Tennessee, but there is no date as to when this plat was recorded and the plat does not show any dedication of the alley in controversy.

Mr. R. A. Anderson, manager of the Memphis Abstract Company, testified so far as the records of Shelby county were concerned: the west sixty feet of lot No. 9 is owned by Moore and east forty feet by complainants, that there was no record of any dedication of any portion of lot No. 9 for street purposes, that Queen street had been dedicated up to complainants' and Moore's south line which was Carnes subdivision. This witness was not asked as to the date of the Carnes subdivision.

E. C. Carter, one of complainants' tenants and who lives in the house that fronts on Peach street owned by complainants, testified that he has lived in this house for fifteen years and that Queen street or an alley had been used by a means of ingress and egress for that period of time. That is about the fullest and longest period of public use the complainants have established.

In Cross v. Lumber Co., 139 Tenn., 79, wherein complainant sought the specific performance of a contract involving real estate, the Supreme Court said:

"In a suit by the vendor to enforce performance of a contract for the sale of land, the vendee will not be compelled to accept the title unless it is a marketable one; that is, one which will not expose him to litigation. To force upon the vendee a title which he may be compelled to defend in the courts is to impose upon him a hard bargain; and this a court of equity, in the exercise of its discretion, will refuse to do, irrespective of the question whether the title is actually good or bad."

In the Cross case, supra, complainants' bill was dismissed by the Chancellor and his decree affirmed by the Supreme Court.

The contract of the party seeking specific performance must be free from all blame. Kelley v. Central Pac. Rr. Co., 74 Cal., 557, 5 Am. St. Rep., 470.

The contract to be entitled to a specific performance must be fair, just, equal in all its parts.

To entitle a complainant to specific performance of a contract, it must appear, not only that the contract was in all respects full, fair, and honest in the beginning, but that the performance of it may be fairly and conscientiously required.

The court will not interfere to decree a specific performance if there be suspicion of unfairness, or if it would be a hardship on the defendant. Cocke v. Evans (9 Yerger), 17 Tenn., 287, 297; Caldwell v. Va. Fire Ins. Co., 124 Tenn., 593.

"One who asks specific performance of a contract in the procurement of which he has practiced deceit is always an unwelcome suitor in a court of equity and will generally be denied relief."

"A much less degree of proof is required to induce a court of equity to refuse specific performance of a contract for the sale of land than is required to reform it or to set it aside."

"Omission or mistake in a contract for the sale of land, or that it is unconscientious or unreasonable; or that there has been concealment, misrepresentation, or unfairness are some of the causes which will induce a court of equity to refuse specific performance."

"Though a contract is valid at law, equity will not enforce it specifically unless the transaction is free from fraud or surprise."

"When a contract for the sale of land is obtained by deceitful representation made by and on behalf of the vendee that he intends to use the property for the erection of dwelling houses in fact he intends to use it for a blacksmith shop, specific performance of the contract will be refused."

"A decree for specific performance which includes the wife of the defendant who is not a party to the proceeding is erroneous and will be reversed." Brown v. Pitcairn, 148 Pa. St., 387, 33 Am. St. Rep., 834.

On the question of rescission we find the following authorities supporting defendant's contention:

"If the boundary lines are misrepresented the purchaser may rescind the sale though the representation may not have been made with knowledge of its falsity." 27 R. C. L., 376, sec. 77, and cases cited.

"A misrepresentation of the location with reference to a suburban street, or platted lots, involves a material matter; and where the location of such lots is shown on the plat by the governmental subdivision only, their location with reference to the city limits or suburban street is not a matter so readily ascertainable that a purchaser is not justified in relying on the representation made in reference thereto by the seller." 114 Minn., 264, 38 L. R. A. (N. S.), 301 (and cases cited).

"An entire contract in relation to land will not be rescinded in part and enforced in part, but the party imposed upon may

have it entirely rescinded, or compensation for the defect fraudulently concealed from him." Jopling v. Dooley, 9 Tenn., 289 (citing and approving Grissom v. Sorrel, 27 Tenn., 372.)

"A purchaser of real estate has a right to believe and rely upon representations made to him by his vendor as to the character, quality, and location of the property when the facts concerning which the representations are made are unknown to the vendee, although they are a matter of public record."

"An omission by one of the parties to an agreement to make inquiries as to the truth of facts stated by the other cannot be imputed to him as negligence. Every contracting party has an absolute right to rely on the express statement of an existing fact, the truth of which is known to the opposite party and unknown to him, as the basis of a mutual agreement."

"If a vendor of real estate makes material representations as to the character, quality, or location of his land, and the vendee believes, relies, and acts on such representations, which prove to be false, the vendor cannot shield himself from the consequences of his fraudulent conduct by interposing the plea of laches on the part of his vendee."

"If one wishing to buy two lots in a city addition for building purposes is shown corners and stakes by the owner's agent, who represents that one is a corner lot, which is false, that the other is contiguous thereto, and that both front on a certain street, but the streets have not been opened through the addition, and the prospective purchaser, believing and relying on the truth of such representations, enters into a written contract with the owner, agreeing to purchase and to pay for the lots, such representations, under the circumstances, are material, and entitle the former to a rescission of the contract." Hoock v. Bowman, 42 Neb., 80, 47 Am. St. Rep., 691, and cases cited thereunder.

We are of the opinion that the Chancellor was in error in decreeing in favor of complainants. The defendant's second and fifth assignments of error are sustained and the judgment rendered in the lower court is reversed. Complainants' bill is dismissed, the defendant's cross-bill is sustained and a decree will be entered rescinding and cancelling the contract and decreeing a judgment in favor of cross-complainant for $100 and all costs of the suit including the costs of the appeal for which execution will issue.

Heiskell and Senter, JJ., concur.