WARTRACE BANK & TRUST COMPANY v. MRS. ADA YELL and JIMMIE RUTH ROBERTSON.

Middle Section.   May 28, 1932:

Petition for Certiorari denied by Supreme Court, January 7, 1933.

W. P. Cooper, of Shelbyville, solicitor for complainant.
A. L. Davidson, of Tullahoma, solicitor for defendants.

DeWITT, J.  On May 28, 1924, Mrs. Ada Yell, widow of J. C. Yell, conveyed to her daughter, Jimmie Ruth Robertson, a farm of 170 acres, reciting as the consideration, "the love and affection I have for my daughter Jimmie Ruth Robertson, wife of Ernest B. Robertson, of Tullahoma, Tennessee, and in an effort to equalize distribution of the family property, that is to say, in order that my said daughter Jimmie Ruth Robertson may receive family property of approximate value with that heretofore given my two sons, Warren S. Yell and Dennie W. Yell." This deed was registered on August 6, 1928.

On June 27, 1928, the receiver of the Wartrace Bank & Trust Company filed a bill against W. S. Yell and his mother, Mrs. Ada Yell to recover on a promissory note for balance of money loaned to W. S. Yell, and on which note Mrs. Ada Yell was surety. In that cause a decree was entered against both of said defendants for the sum of $2175, with interest from November 28, 1927, and attorney's fees; and said judgment is unsatisfied. The receivership of the Wartrace Bank & Trust Company was terminated, its remaining assets were

delivered to its directors and stockholders for final liquidation, and suits for the collection of unpaid assets were authorized to be brought in the name of the Wartrace Bank & Trust Company.

On December 17, 1930, said Bank filed the bill in this cause against Mrs. Ada Yell and Jimmie Ruth Robertson to have the aforesaid deed set aside as fraudulent, null and void as against the complainant, to have a sale of said land, and to have the proceeds of said sale applied as far as necessary to the satisfaction of complainant's debt.

The defendants in their answer, among other things, denied that at the time the indebtedness to the Bank was incurred Mrs. Ada Yell was the owner of said land; and they averred that said land had in reality been the property of the defendant Jimmie Ruth Robertson since the probate of the will of her father, J. C. Yell in the year 1909. They also averred that at the time of the execution of the deed Mrs. Ada Yell was solvent. They denied the averment of the bill that the officers and directors of the bank relied upon her ownership of this tract of land when they accepted her originally as endorser or surety on the note of her son. They averred that the conveyance of the land was made in good faith for the purpose set out in the will of J. C. Yell, and that it vested an absolute title in Jimmie Ruth Robertson.

Prior to the death of J. C. Yell in 1909 this land was owned by his wife Mrs. Ada Yell. In his will J. C. Yell gave to his son D. W. Yell a tract of 190 acres of land and to his son Warren S. Yell another tract of 191 acres adjoining it. All the rest and residue of his property he devised and bequeathed to his wife Mrs. Ada Yell.

The fifth item of his will is as follows:

"My wife and I own jointly the place upon which we now live. Deed is made to us jointly, and in the event she survives me this home place will belong to her absolutely. In the event I survive her it is my will and wish and I so direct that this home place be sold by my Executor, publicly or privately, in parcels or as a whole, on such terms as he may deem best in the exercise of a wise discretion and the proceeds of the sale he will distribute as follows: One-third to my son, Dennie W. Yell, one-third to my son Warren S. Yell, one-third to my daughter, Jimmie Yell.

"No further provision is made for my daughter Jimmie Yell because of a promise made by my wife that she will execute will devising to my said daughter, Jimmie Yell, during life, and after her death to such child or children as the said Jimmie Yell may leave surviving her, the one hundred and seventy (170) acre tract owned by my wife, lying and being in the 25th Civil District of Bedford County, Tennessee, familiarly known as the portion of the Nicholas Troxler place, directing that in the event of my daughter dying without child or children the said 170 acre tract of land shall become the property of my two sons, share and

share alike, if living, and if not, the child or children of the deceased son or sons to take such share as their father would have been entitled to if living.''

At the time of the death of the said testator his only daughter, the defendant Mrs. Jimmie Ruth Robertson, was unmarried. It is manifest that it was the plan and purpose of him and his wife that a farm should be devised by the testator to each of his two sons, and that the provision for their daughter should be made by a devise by his widow of this tract of land to their daughter.

Mrs. Ada Yell took under said will, complied with the terms and provisions thereof, acquiescing in the devises to her two sons. She did not wait to devise the farm to her daughter but undertook to accelerate the performance of her agreement with her husband by the execution and delivery of the deed.

The Chancellor was of the opinion that the deed was executed in performance of a trust, established by the terms of the will and accepted by the widow as a trustee; that having acquiesced in and carried out the will of her husband she was in good conscience and equity bound to perform the agreement; and that neither the agreement nor any act of the parties precluded her from accelerating the performance. He therefore dismissed the bill.

For the complainant it is insisted that all of these conclusions are erroneous; especially that no trust was created by the terms of the will, and that Mrs. Ada Yell was not bound in good conscience and equity to execute the deed or otherwise perform the agreement to the detriment of complainant's rights and interests.

The theory that under an obligation to devise the said land to the daughter a trust was raised, and an equitable estate created, is the basis for the proposition that in the face of her duties Mrs. Yell could validly convey the land to her daughter. In support thereof the well settled rule is invoked that if a beneficiary under a will prevents the testator from making provisions in his will for another by promising that if it be done he would do something for the person thus intended to be provided for with which the testator is satisfied, equity will compel the performance of the promise or will declare a trust in favor of the person for whose benefit the promise was made. Drakeford v. Wilks, 3 Atkyns, 539; Richardson v. Adams, 10 Yerg., 273; McLellan v. McLean, 2 Head, 684; Nash v. Bremner, 84 N. J. Eq., 131, 92 Atl., 938. It is indeed a general rule that a testamentary gift on a parol promise by the donee to hold the estate in trust for the benefit, in whole or in part, for another, creates a valid trust. 26 R. C. L., 1241. Upon the same principle a trust could arise as to the property which the legatee or devisee promises to convey or devise to the third person in consideration of the benefits under the will. Upon these rules is based the conclusion that the conveyance undertaken, being merely

made to the equitable owner was not fraudulent as against the creditors of the conveyor. 27 C. J., 433, and cases cited. But such a conclusion would violate utterly the right, and paralyze the remedy, of a creditor claiming to be ignorant of the transactions disclosed and to have loaned money upon faith of the grantor's ownership of the land. There is no evidence that at any time prior to the registration of the deed in question any representative of the Bank had any actual knowledge of the aforesaid recitals in the will of J. C. Yell, or of the agreement between Mr. and Mrs. Yell, or of any claim or interest on the part of the daughter. The title of Mrs. Yell to this land was in no wise derived through the will of her husband; in other words, the will was not anywhere in her chain of title; consequently one extending credit to Mrs. Yell, or upon faith of her ownership of the land, was not affected with constructive notice of the recitals in the will. 23 R. C. L., 207; Kansas City Land Co. v. Hill, 87 Tenn., 589, 11 S. W., 797, 5 L. R. A. 45.

In Moore v. Walker, 3 Lea, 656, 665, it was said:

"Even a resulting trust, a fortiori, a constructive trust must yield to the equity of a bona-fide purchaser for value without notice, who has the legal title," citing Sandford v. Weeden, 2 Heisk., 71, 81; Turner v. Petigrew, 6 Humph., 438; Bass v. Wheless, 2 Tenn. Chy., 531.

It will be remembered that the deed of Mrs. Yell to her daughter was executed on May 28, 1924, was immediately delivered to the conveyee, but was withheld from registration by her until August 6, 1928, which was after the bill was filed to recover on the note. Mrs. Yell, when asked for what purpose she made the deed to her daughter, said, "I was just turning over the property to her that was the will of my husband through me to her." She further testified that at that time she had no idea that her son W. S. Yell, for whom she was surety on the note, was insolvent; that he had property but she did not know to what extent he was indebted. She denied that she sought to alienate her property so the complainant could not reach it. At the time of the execution of the deed she was surety on a note of W. S. Yell for $5,000, payable to the complainant Bank. The original loan was made by said Bank to W. S. Yell in 1921. His mother was at all times surety on this note, and the note for $2175 which was reduced to judgment was executed in 1927 for the balance due on said original loan. W. S. Yell did have some property, the extent of which is not disclosed, but there is no evidence that he ever paid anything on the note, excepting one payment of $500; but it appears that his mother made the other payments which reduced the principal to $2175. She owned a house and lot and 14 acres of town lots in Wartrace, worth about $5,000, and also some stock in another bank. All of this property was unencumbered. She sold her stock and paid the proceeds to the complainant on the note. She mortgaged the house and all the

lots and paid the proceeds on the note and then lost the property under foreclosure.

It is insisted that the evidence does not show that the complainant Bank made the loan and accepted renewals from time to time upon faith of Mrs. Yell's ownership of the 170-acre farm; but that it relied upon her ownership of property in Wartrace, and upon the son's ownership of certain property. It appears however, that the officers of the bank knew that Mrs. Yell owned this farm; and that in 1927 when they accepted the renewal note of $2175, Mrs. Yell had disposed of all of her property in Wartrace and so far as the records show, and so far as the representatives of the Bank knew, she owned this farm and it was the only property which she did own. Certain officers of the Bank testified that the original loan was made on faith of the security of the financial responsibility of Mrs. Yell; and that when the note was renewed for the balance in 1927 they depended on the said security for payment, as W. S. Yell was in bad financial condition; that they considered her solvent because of her ownership of this farm. We cannot escape the conclusion that these statements are true. At that time the representative of the Bank believed that she owned the farm, being ignorant of the existence of the unregistered deed. Mrs. Yell testified that at one time she was offered $25,000 for the farm but that its value had become greatly reduced; and it does appear that the farm is worth about $10,000.

In Susong v. Williams, 1 Heisk., 625, a reconveyance by one Joseph Williams to his mother was set aside as fraudulent as against his existing creditors. His mother had previously conveyed the land to him because he was a Union man and she a Confederate who feared lest her land might be confiscated. The Court held that Joseph Williams having been held out to the world as an owner and enabled to obtain credit was estopped to reconvey and the conveyance was made without consideration. Upon this principle Mrs. Yell, being the owner of the farm of record, was estopped as against the complainant Bank to convey the farm to her daughter. The evidence does not show that she owned other property in 1924 when she executed the deed; but of course she was surety on the note at that time. She undertook to convey the farm in the face of this obligation.

In Dunlap v. P'Pool and wife, 6 Tenn. Apps., 91, the rule was declared that even where a valid, express trust involving real estate is created by a contemporaneous parol agreement, the vendee may hold the property conveyed in trust except as against creditors of the original vendor.

In Stanton v. Shaw, 3 Baxt., 12, a reconveyance of a storehouse and lot by a son to his father was held not to have been made with fraudulent intent, because it was made pursuant to agreement of the parties when the property was purchased by the father when he was

indebted and had it conveyed to the son. But the Court held that the son in reconveying had done that which in good conscience he ought to have done and it because the father had paid his debts and the son was solvent when he reconveyed, although he afterward became insolvent. That case upon its facts is not analogous to the case before us, neither was it apparently intended therein to overrule or modify Susong v. Williams, supra. Mrs. Yell's conveyance to her daughter must be treated as a voluntary conveyance so far as the complainant's rights are involved. Complainant therefore has a right to have this conveyance set aside to the extent necessary to satisfy its claim. Chapter 125, section 7, Public Acts of 1919.

It results that the decree of the Chancellor is reversed and the cause will be remanded to the Chancery Court of Bedford County for further proceedings not inconsistent with this opinion, and in furtherance of the purpose of the original bill. The costs of the appeal will be adjudged against the defendants.

Faw, P. J., and Crownover, J., concur.